0950

Naomi STALLINGS, Appellant v. Dr. Jack RATLIFF, Respondent, and
Daniel M. STALLINGS, Jr., Appellant v. Dr. Jack RATLIFF, Respondent.

(356 S. E. (2d) 414)

Court of Appeals

*Donald E. Jonas*, of Columbia, and *Frampton W. Toole*,
Aiken, *for appellants.*

*David A. Brown* and *James M. Holly*, of Aiken, *for
respondent.*

Heard Feb. 19, 1987.

Decided May 4, 1987.

BELL, Judge:

Naomi Stallings brought this action for injuries she allegedly received as a result of the negligence of her physician, Dr. Jack Ratliff. The companion case involving a loss of consortium claim by her husband was consolidated for trial. Stallings alleges she suffered a perforation of her esophagus during an esophagoscopy undertaken without her informed consent. At the close of the evidence, the circuit court granted Ratliff's motion for a directed verdict. Stallings and her husband appeal. We reverse and remand.

Stallings works as a cook at a restaurant in Aiken. One day, while eating a piece of chicken, she felt what she thought was a small bone lodge in her throat. After Stallings experienced continued discomfort in her throat for the next few days, her employer, Vivian Jolly, took her to the emergency room of a local hospital where she was examined. No bone was discovered. When the discomfort persisted, Mrs. Jolly took Stallings to a physician, who examined her on two occasions without finding any object in her throat. The physician then referred Stallings to Ratliff, a thoracic surgeon, for further evaluation.

Mrs. Jolly accompanied Stallings to Ratliff's office and was present with her at all times. After examining Stallings, Ratliff recommended she undergo a laryngopharyngoscopy under general anesthesia. In this procedure, the physician inserts a rigid tube, called a rigid esophagoscope, into the esophagus. The esophagoscope has a light source which allows the physician to make a visual examination of the esophagus. One risk of the procedure is perforation of the esophagus.

Ratliff performed the laryngopharyngoscopy on Stallings a few days after their initial consultation. During the procedure, he perforated her esophagus. As a result, an emergency thoracotomy had to be performed to repair the perforation.

Stallings tried her case on the theory that Ratliff was under a duty to inform her before obtaining her consent that perforation of the esophagus is a risk of the procedure he was recommending and that he breached this duty by failing to disclose the risk.

The parties agree that a physician is required to disclose those risks which a reasonable medical practitioner in the

same branch of medicine would disclose under the same or similar circumstances. *Hook v. Rothstein*, 281 S. C. 541, 316 S. E. (2d) 690 (Ct. App.), *cert. denied*, 283 S. C. 64, 320 S. E. (2d) 35 (1984). They also agree that both the standard of care and the physician's failure to conform to the required standard must ordinarily be established by expert testimony, unless the common knowledge or experience of laymen is comprehensive enough to permit the recognition or inference of negligence from the particular facts. *Welch v. Whitaker*, 282 S. C. 251, 317 S. E. (2d) 758 (Ct. App. 1984); *Botehlo v. Bycura*, 282 S. C. 578, 320 S. E. (2d) 59 (Ct. App. 1984). At issue is whether Stallings presented sufficient expert testimony to create a reasonable inference of negligence.

Ratliff argues a directed verdict was proper for two reasons: (1) there was no expert testimony establishing the standard of care; and (2) there was no expert testimony that Ratliff failed to conform to the required standard of care.

In deciding a motion for a directed verdict, the evidence and all reasonable inferences which can be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Timmons v. McCutcheon*, 284 S. C. 4, 324 S. E. (2d) 319 (Ct. App. 1984). A motion for a directed verdict should not be granted if the evidence, so viewed, is susceptible of more than one reasonable inference. *O'Neal v. Carolina Farm Supply of Johnston, Inc.*, 279 S. C. 490, 309 S. E. (2d) 776 (Ct. App. 1983). Reviewing the evidence in the light most favorable to Stallings, we find it supports a reasonable inference of negligence by Ratliff. Consequently, the trial judge erred when he directed a verdict.

Stallings called as her expert witness Dr. Alan Howard Brill, an otolaryngologist with training and experience in the use of the rigid esophagoscope. Dr. Brill testified:

> The main concern doing an esophagostomy [sic], as far as possible complications, would be perforation of the esophagus.
> Q. And what warning would be appropriate to give to a patient regarding that risk?
> A. I think the patient has to be aware, as in any surgical procedure, the possible complications of surgery.

On cross examination, Dr. Brill further stated:

> Whether it's an esophagoscopy or not, the procedure has to be explained to the patient, no matter what the procedure is.
> Q. . . . [D]o you understand the standard of care to mean that the patient is to be informed of the risks?
> A. Yes, I do.

When asked what he should have advised Stallings about the risks associated with the use of the rigid esophagoscope, Ratliff himself stated:

> I should have explained to her the kinds of risks associated with this kind of procedure, with looking down a swallowing tube with a pipe with a light on the end of it, includ[ing] . . . the risk of the instrument itself damaging the esophagus.

Viewing this testimony in the light most favorable to Stallings, we hold that Stallings presented sufficient expert testimony to go to the jury on the standard of care.

Ratliff next argues there was no competent evidence that he breached his duty to disclose the risk of a perforated esophagus to Stallings.

The testimony was in sharp conflict on this point. Ratliff testified that prior to obtaining her consent to the procedure, he informed Stallings in nontechnical language of the risks involved in a esophagoscopy, including the specific possibility the esophagus would be perforated. Stallings, on the other hand, testified as follows:

> Q. Did he say anything more to you than he was going to look down your throat with a light and with a pair of tweezers, pull out the bone and throw it in the trash can and that you would go to sleep? Did he say anything more than that?
> A. He didn't say no more than that.
> Q. Did he ever say to you that your esophagus could be perforated by this procedure?
> A. No, he didn't tell me.

Mrs. Jolly, who was admittedly with Stallings during the

entire time she was in the doctor's office, also testified that Ratliff mentioned nothing at all about the risks associated with the procedure.

Ratliff insists this conflict of testimony, standing on its own, did not create a jury issue. In his view, because Dr. Brill, the expert witness, did not say, in so many words, "if a doctor using the rigid esophagoscope does not tell his patient there is a risk the esophagus may be perforated, he has deviated from the standard of care observed by a reasonable medical practitioner under the same or similar circumstances," there was no competent evidence of negligence to go to the jury.

The issue of breach of duty does not turn on a ritual ■ incantation of certain magic words by an expert witness. Breach of duty is a fact question to be decided by the jury on the evidence presented in each case. *See Sharpe v. South Carolina Department of Mental Health*, 292 S. C. 11, 354 S. E. (2d) 778 (Ct. App. 1987) (Bell, J., concurring) (whether defendant failed to observe the standard of care required by law in a particular case is a question of fact for the trier of fact). In a medical malpractice case, expert testimony is often needed to aid the jury in deciding the issue of breach of duty, because it involves questions of medical knowledge and judgment not within the comprehension or experience of laymen. In such circumstances, the purpose of expert opinion is to aid the finder of fact in matters which are outside the range of common knowledge and experience. *Hughes v. Children's Clinic, P.A.*, 269 S. C. 389, 237 S. E. (2d) 753 (1977); *Staudinger v. Sooner Pipe & Supply Corp.*, 208 Kan. 100, 490 P. (2d) 619 (1971); *Metropolitan Ice Cream Co. v. Union Mutual Fire Insurance Co.*, 358 Mo. 727, 216 S. W. (2d) 464 (1949). However, where the evidence permits the jury to recognize or infer a breach of duty without the aid of expert testimony, such testimony is not required in order for the case to go to the jury. *See Bessinger v. DeLoach*, 230 S. C. 1, 94 S. E. (2d) 3 (1956); *Welch v. Whitaker, supra; Botehlo v. Bycura, supra.*

In this case, Brill testified, and Ratliff himself admit- ■ ted, there was a duty to disclose the risk of a perforated esophagus to the patient before obtaining consent to the esophagoscopy. Implicit in this testimony was

the reasonable inference that a failure to make the disclosure is a breach of the standard of care required in the circumstances. Ratliff testified that he disclosed this particular risk to Stallings. Stallings and Mrs. Jolly testified that he did not. Based on the expert testimony as to standard of care, it was assuredly within the competence of the jury to draw the inference that if Ratliff's testimony was correct there had been no breach of duty, while if Stallings was correct there had been a breach of duty. No expert testimony was necessary to aid the jury in drawing these inferences. The critical issue was not a question involving medical knowledge and judgment, but simply a question of who was telling the truth about whether Ratliff disclosed the risk. In other words, a classic jury issue was presented. *Melton v. Williams*, 281 S. C. 182, 314 S. E. (2d) 612 (Ct. App. 1984); *Doe v. Asbury*, 281 S. C. 191, 314 S. E. (2d) 849 (Ct. App. 1984) (credibility of witnesses is a question for the jury). For this reason, a directed verdict was inappropriate.

For the reasons stated, the judgment is reversed and the case remanded for a new trial.

Reversed and remanded.

GARDNER and SHAW, JJ., concur.