594 S.E.2d 526

**William P. HATFIELD, individually and on behalf of The Hyman Law Firm, Respondent,**

v.

**Susan F. VAN EPPS, Appellant.**

**No. 3755.**

Court of Appeals of South Carolina.

Heard Jan. 3, 2004.

Decided March 8, 2004.

Rehearing Denied April 22, 2004.

James H. Moss and H. Fred Kuhn, Jr., both of Beaufort, for Appellant.

Kevin M. Barth, of Florence; R. Davis Howser and Andrew E. Haseldon, both of Columbia, for Respondents.

## PER CURIAM:

William P. Hatfield, individually, and on behalf of the Hyman Law Firm, brought an action against Susan Van Epps to recover attorney's fees she owed Law Firm. Van Epps filed a counterclaim, asserting legal malpractice. Van Epps appeals the trial judge's decision to grant a directed verdict in Law Firm's favor on a portion of her malpractice cause of action and from the jury verdict, asserting the trial judge made numerous errors. We affirm in part, reverse in part, and remand.

## FACTS

Van Epps and Leslie Stewart were married in 1982. Both are physicians. The couple had two sons, born in 1987 and 1989. They separated in 1995, and Stewart filed for divorce that same year. On June 5, 1995, Van Epps hired Evander Jeffords of the Hyman Law Firm to represent her in the divorce. At the time of the divorce, Stewart was a member of Pee Dee Surgical Group. When Van Epps hired Jeffords, he was also representing a senior partner of the Pee Dee Group, Dr. Bolick, in his divorce.

Pursuant to Law Firm's recommendation, Van Epps obtained twenty affidavits from witnesses favoring her on the issue of child custody. Van Epps was awarded custody at the temporary hearing. At the divorce trial, Law Firm failed to call any witnesses to testify on Van Epps' behalf on the custody issue. In fact, of the three witnesses besides Van

Epps who were called by Law Firm, two testified in support of its claim for attorney's fees.[1]

In assessing the value of the Pee Dee Group for purposes of equitable distribution, Jeffords suggested Van Epps use Carroll Webster, a CPA whom Jeffords was also using in Bolick's divorce action. At the time Jeffords selected him to perform the valuation for Van Epps, Webster was performing personal accounting work for Van Epps and Stewart, and he was also the CPA for Pee Dee Surgical Group. Webster used two contracts signed by the members of the Pee Dee Group, a Stockholder Redemption Agreement and a Salary Continuation Agreement,[2] in order to value the practice for the Bolick divorce. Jeffords asked Webster to use the same formula in his valuation of the medical practice for Van Epps' divorce.

Stewart filed his action for divorce in June of 1995. The merits hearing was held on April 15 and 16, and May 28–30, 1996. The only expert valuation of the Pee Dee Surgical Group introduced at trial came from Webster, who testified the practice had a value of approximately $52,000, using the Salary Continuation Agreement, and a value of $665, using the formula set forth in the Shareholder Redemption Agreement. Stewart averred in his financial declaration that the value of the practice was zero.

The family court ultimately granted Van Epps a divorce based on Stewart's adultery. The court granted Stewart custody of the parties' two children and ordered Van Epps to pay child support of $2,500 per month. The family court adopted Webster's value of $52,258.00 for the practice. On March 15, 1996, one month prior to the first day of the merits hearing, a Stock Purchase Agreement was executed between McLeod Physician Services, Inc., and the four shareholders of the Pee Dee Surgical Group whereby McLeod agreed to purchase Stewart's practice for 3.1 million dollars. Pursuant to the contract, the closing was scheduled for March 14, 1997.

---

1. The trial judge refused to permit Van Epps' counsel to cross-examine Jeffords as to why he failed to call any of the people who filed affidavits as witnesses at the final hearing.

2. The salary continuation document, by its own terms, applied only in the event of the retirement, death, or disability of a shareholder.

Stewart ultimately received $775,000 for his interest pursuant to the sale.

Law Firm commenced this action in November of 1998 to recover attorney's fees from Van Epps in the sum of $52,120. Van Epps counterclaimed, alleging Law Firm was negligent in its representation in her divorce. She claims Law Firm failed to present numerous witnesses regarding the custody issue, failed to obtain a proper valuation of the Pee Dee Surgical Group, and failed to inform her of a conflict of interest. The trial judge directed a verdict in favor of Law Firm on the custody issue and sent the remaining issues to the jury. After an *Allen*[3] charge, the jury found for Law Firm, awarding it $52,120 in attorney's fees, and found in favor of Law Firm on Van Epps' counterclaim. After a successful request for prejudgment interest of $18,100 on the original attorney's fees, Law Firm was awarded an additional $19,090.37 in attorney's fees and costs. Under the trial judge's order, the judgment against Van Epps totaled $89,310.37. Van Epps appeals.

## LAW/ANALYSIS

### I. Child Custody

■ Van Epps argues the trial judge erred in directing a verdict in favor of Law Firm on the claim of legal malpractice regarding the child custody issue. We agree.

Van Epps contends the trial judge erred in directing a verdict in Law Firm's favor where there was evidence that Law Firm's breach of the duty owed to her was the proximate cause of child custody being granted to Stewart. When reviewing an order granting a directed verdict, this court views the evidence in the light most favorable to the party against whom the verdict was granted. *Carson v. Adgar*, 326 S.C. 212, 216, 486 S.E.2d 3, 5 (1997).

It is undisputed that at the final divorce hearing, Law Firm did not call any witnesses, other than Van Epps herself, in support of her claim for custody. Stanley Feldman, an attorney, testified for Van Epps as an expert witness. He opined Law Firm deviated from the standard of care by failing to call

---

3. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

any witnesses on Van Epps' behalf. According to Feldman: "[Law Firm's] failure to call witnesses in this case fell below the standard, made the performance, or made the work below the standard in all fairness." He also testified that: "I think there has been a deviation from the standard of care in the failure to present those witnesses and failure to present a proper custody case." In response to Van Epps' counsel's question as to whether he had an opinion as to "most probably whether or not the failure to call those witnesses was a contributing proximate cause . . . to the loss of her children," Feldman responded, "Yes, sir." No motion was made to strike Feldman's testimony.

At the conclusion of Van Epps' case, Law Firm moved for a directed verdict on the ground that the evidence failed to establish that Law Firm's breach of duty to Van Epps was the proximate cause of any damages. The trial judge ruled that because Feldman did not testify that Law Firm's deviation from the standard of care most probably caused her to lose custody, the evidence was not sufficient to submit the claim to the jury.

In granting Law Firm's motion for a directed verdict, the trial judge relied on *Baughman v. American Tel. & Tel. Co.*, 306 S.C. 101, 410 S.E.2d 537 (1991). There, the supreme court stated that "before expert testimony is admissible upon the question of the causal connection between plaintiff's injuries and the acts of the defendant, the testimony must satisfy the 'most probably' rule." *Id.* at 111, 410 S.E.2d at 543. Nevertheless, the *Baughman* decision also specifically holds that: "In determining whether particular evidence meets this test it is not necessary that the expert actually use the words 'most probably.' It is sufficient that the testimony is such 'as to judicially impress that the opinion . . . represents his professional judgment as to the most likely one among the possible causes.' " *Id.* (quoting *Norland v. Washington General Hospital*, 461 F.2d 694, 697 (8th Cir.1972)).

Feldman fell short of testifying that Law Firm's failure to call any witnesses, other than Van Epps, on the issue of custody was the sole cause of her loss of custody; however, this was not necessary in order to withstand Law Firm's motion for directed verdict. *See Sims v. Hall*, 357 S.C. 288,

299, 592 S.E.2d 315, 319 (Ct.App.2003) ("Proximate cause does not mean the sole cause. The defendant's conduct can be a proximate cause if it was at least one of the direct, concurring causes of the injury."). While expert testimony is normally required in a professional negligence action to establish both the standard of care and the defendant's failure to conform to that standard, Feldman's testimony satisfied that requirement. Feldman clearly testified that Law Firm deviated from the standard of care in representing Van Epps and that this breach of care was a contributing proximate cause in the loss of custody of her children. This evidence was sufficient to create a jury issue as to whether the alleged breach of the standard of care proximately caused damage to Van Epps. *Stallings v. Ratliff*, 292 S.C. 349, 353, 356 S.E.2d 414, 417 (Ct.App.1987) ("The issue of breach of duty does not turn on a ritual incantation of certain magic words by an expert witness. Breach of duty is a fact question to be decided by the jury on the evidence presented in each case.").

The trial judge erred in refusing to submit the issue of Law Firm's negligence in its handling of Van Epps' custody claim to the jury. Accordingly, we reverse and remand this issue for a new trial.

## II. Child Custody Affidavits

■ Van Epps also argues the trial judge erred in failing to allow the custody affidavits into evidence. We agree.

As noted earlier, Van Epps procured twenty affidavits which were submitted to the family court at the temporary hearing. Van Epps attempted to introduce these affidavits into evidence in this action. The trial judge sustained Law Firm's objection to their introduction on the basis of hearsay. This was error.

■ It is well settled that a statement that is not offered to prove the truth of the matter asserted should not be excluded as hearsay. *R & G Constr., Inc., v. Lowcountry Reg'l Transp. Auth.*, 343 S.C. 424, 439, 540 S.E.2d 113, 121 (Ct.App.2000). These affidavits were not offered for the truth of the matter asserted, *i.e.*, that Van Epps should have been awarded custody of the parties' two children. Rather, they were offered to show the extent of Law Firm's alleged negligence in failing to call any of these witnesses at the final hearing. Although the

trial judge ultimately agreed with Van Epps' counsel that the affidavits were not being offered for the truth of the matter asserted and were, therefore, not hearsay, the judge nevertheless inexplicably refused to admit them, ruling instead that Van Epps should offer a compilation of the affiants' names and the dates of each affidavit.

We hold that Van Epps was entitled to introduce these affidavits into evidence to show the extent of Law Firm's alleged negligence in failing to call any witnesses on her behalf at the custody trial. The trial judge erred in sustaining Law Firm's objection on the basis of hearsay.

### III. Business Valuation

Van Epps claims it was error for the trial judge to deny her directed verdict motion on the legal malpractice issue regarding the value of the Pee Dee Group because the evidence showed Law Firm did not present a proper business valuation. We disagree.

This court must affirm the denial of a directed verdict motion when there is any evidence to support the ruling below. *Pike v. S.C. Dep't of Transp.*, 332 S.C. 605, 610, 506 S.E.2d 516, 518 (Ct.App.1998), *aff'd as modified,* 343 S.C. 224, 540 S.E.2d 87 (2000). During the trial, Harry Wilson, an attorney, testified as to the standard of care of family law attorneys. When asked whether he believed Law Firm deviated from this standard of care in its efforts to value the Pee Dee Surgical Group, Wilson stated, "I do not believe that [Law Firm] has deviated from the standard of care in regards to this business valuation." Although Van Epps' expert disputed Webster's business valuation, Wilson's testimony was some evidence that Law Firm did not breach the standard of care regarding the valuation. Therefore, the denial of the directed verdict motion was proper.[4]

### IV. Sale of the Pee Dee Surgical Group

Van Epps contends the trial judge erred in refusing to allow into evidence the amount of the sale of the Pee Dee Surgical Group to McLeod Hospital. We agree.

---

4. Although we affirm the denial of the directed verdict based on the record before us, our decision in no way affects Van Epps' ability to move for a directed verdict on this issue at her new trial.

The trial judge, relying on *McElveen v. McElveen*, 332 S.C. 583, 506 S.E.2d 1 (Ct.App.1998), ruled *in limine* that the amount of the sale of the surgical practice to McLeod was not relevant to the issue of the value of Stewart's practice for the purposes of marital litigation. Moreover, the trial judge ruled that even if the evidence were relevant, it would be highly prejudicial, and therefore inadmissible. We hold this was error.

■■ Marital property is to be identified and valued as of the date the marital litigation is filed or commenced. *See* S.C.Code Ann. § 20–7–473 (Supp.2002); *Mallett v. Mallett*, 323 S.C. 141, 151, 473 S.E.2d 804 810 (Ct.App.1996). However, it is equally well settled that the parties to domestic litigation are entitled to share in any appreciation or depreciation in marital assets occurring after separation but before divorce. *See McDavid v. McDavid*, 333 S.C. 490, 497 n. 7, 511 S.E.2d 365, 369 n. 7 (1999) ("We know of no authority, and the husband does not cite any, that holds that only one spouse is entitled to any appreciation in marital assets that occurs after the parties separate and before the parties are divorced. We would think both parties would be entitled to any such appreciation."); *Fields v. Fields*, 342 S.C. 182, 187, 536 S.E.2d 684, 686 (Ct.App.2000) (affirming family court judge's decision to value stock in three businesses as of December 31, 1997, the closest date to the parties' December 12, 1997, divorce rather than as of the date of filing); *Dixon v. Dixon*, 334 S.C. 222, 228, 512 S.E.2d 539, 542 (Ct.App.1999) ("It is an unfortunate reality that, given the volume of cases handled by our family courts, there often is a substantial delay between the commencement of an action and its ultimate resolution. Thus, it is not unusual for the value of marital assets to change, sometimes substantially, between the time the action was commenced and its final resolution. In such a case, the family court has the ability to consider the post-filing appreciation or depreciation when valuing and apportioning the marital estate."); *Mallett*, 323 S.C. at 141, 473 S.E.2d at 804 (affirming valuation of husband's business at time of final hearing where business had declined in value by more than $30,000 since commencement of the action).

Given these authorities, the trial judge erred in ruling that the evidence relating to the sale of the medical practice was

not relevant to the issue of the value of Stewart's practice for purposes of the marital litigation. Moreover, to the extent the trial judge based his decision on relevancy on the *McElveen* decision, it was also in error.

First, it must be noted that the issue of the valuation of the husband's interest in his medical practice in *McElveen* did not involve the question of the *relevancy* of any evidence; rather, the *McElveen* court had to determine what evidence was most probative on the issue of valuation. In *McElveen*, the parties stipulated during the trial that the fair market value of husband's interest in his medical practice was $250,000, specifically noting that the stipulation was reached independently of substantially conflicting experts' opinions. Subsequent to the trial but before the family court issued its decree, the wife moved to set aside the trial stipulation as to the value of the husband's interest, to re-open the evidence on this issue, and for sanctions. This motion was based on previously undisclosed negotiations to sell the medical practice. The family court granted the wife leave to undertake discovery pursuant to the post-trial motion and reserved ruling on the issue of the medical practice valuation pending completion of discovery. The family court found that negotiations to sell the husband's medical practice did in fact begin prior to the time of the stipulation, that they were relevant, and that they should have been disclosed during the original discovery process. *McElveen*, 332 S.C. at 590, 506 S.E.2d at 5. As a result, the family court set aside the parties' stipulation and re-opened the case for the limited purpose of taking evidence on the issue of the fair market value of the practice. Ultimately, the family court found that although negotiations to sell the practice had taken place, a 1987 stock purchase agreement among the shareholder-physicians was controlling on the issue of the valuation of the husband's interest in the practice. Even though the value of the husband's interest as calculated by the 1987 stock purchase agreement was less than the value the parties had stipulated during the trial, the family court determined the stipulated value was the correct value to be used in the division of the marital property.

Both parties in *McElveen* appealed the issue of the valuation of the husband's interest in the medical practice to this court, with the wife contending that the family court erred in

refusing to find that the letter of intent to purchase the medical group for $19,800,652 was controlling as to the value of the husband's interest, and the husband arguing that the family court erred in valuing his interest in the practice in an amount exceeding the $183,000 stock purchase price established by the 1987 stock purchase agreement. This court held the unaccepted offer to purchase the entire practice was of little probative value, and the most probative evidence of the value of the husband's interest in the medical practice was derived from the 1987 stock purchase agreement. 332 S.C. at 593–594, 506 S.E.2d at 6.

Importantly, the stock purchase agreement in *McElveen,* which we found probative, was exclusive. In other words, Dr. McElveen was restricted by the terms of the agreement from transferring his shares in the practice other than as computed by the formula set forth in the agreement. In this case, the salary continuation agreement merely required Dr. Stewart to give notice and a right of first refusal to his partners, but the method of valuation was not limited to an exclusive formula unless no bona fide offer from a third party existed. We held in *McElveen* that once the family court set aside the stipulation, it was error for the court to return to the value proposed in the stipulation without some evidence to support that figure. Accordingly, we held the family court's decision to value the husband's interest at the stipulated value of $250,000 rather than pursuant to the terms of the 1987 stock purchase agreement was not supported by the evidence. We certainly did not hold, however, that such an agreement was the *only* way to value a medical practice or that other evidence of value was inadmissible. *See id.* at 594, 506 S.E.2d at 6 ("We do not intend by our holding to suggest that a stock purchase agreement, where applicable, will always provide the best evidence of fair market value. Our holding as to the determinative nature of the stock purchase agreement in this case should be viewed as limited to the facts presently before us.").

The trial judge thus erred in relying on *McElveen* as support for his decision that the sale of the Pee Dee Surgical Group was not relevant on the issue of valuation for purposes of the marital litigation. In fact, we read *McElveen* to support our decision that the sale of the Pee Dee group was clearly relevant for purposes of the marital litigation. Evi-

dence is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rule 401, SCRE. The essence of Van Epps' malpractice claim against Law Firm relating to the evaluation of Stewart's interest in the Pee Dee Surgical Group is that Law Firm's use of Carroll Webster, rather than an independent witness who arguably would have vigorously pursued the true value of the practice, resulted in the undervaluing of Stewart's share in the practice. It is readily apparent that the agreement to sell the practice to McLeod, which was entered into prior to the parties' merits hearing and thereafter finalized, tends to make it more probable that Van Epps' claim of malpractice was meritorious. It was thus error for the trial judge to refuse to admit this evidence.

█ We likewise reject any contention that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice to Law Firm. In assessing Van Epps' claim of malpractice against Law Firm, the jury was clearly entitled to know that Stewart's interest, which was valued at zero by Stewart and approximately $665 and $52,000 by Webster, was ultimately purchased for $775,000, and that the agreement to purchase it was signed by Stewart and his fellow shareholders prior to the merits hearing in the parties' domestic action. Accordingly, we reverse and remand the issue of malpractice as it relates to the business valuation for a new trial.

## V. Conflict of Interest

█ Van Epps argues the trial judge erred in refusing to direct a verdict in her favor on the issue of legal malpractice regarding a conflict of interest. We disagree.

This court must affirm the denial of a directed verdict motion when there is any evidence to support the ruling below. *Pike*, 332 S.C. at 610, 506 S.E.2d at 518. Van Epps contends a conflict of interest existed due to Law Firm's representation of both Van Epps and Bolick in their divorce actions. Professor John Freeman, appearing without compensation, was qualified as an expert in lawyer's duties and legal malpractice, based largely on his academic and other profes-

sional involvement in matters of legal ethics. He stated, "I believe there was an improper conflict of interest, and I believe that Susan Van Epps suffered because that conflict of interest was not dealt with properly." Professor Freeman further testified that this conflict gave rise to Law Firm's failure to properly value Stewart's interest and that, in his opinion, if there was an unethical conflict of interest, no attorney's fees should be awarded. On the contrary, Jeffords testified that although he disclosed his representation of Bolick to Van Epps, he did not consider the representation to pose a conflict of interest and he therefore did not use that term when speaking with Van Epps. Harry Wilson, an attorney qualified as an expert on the standard of care of domestic attorneys, testified that he did not believe Law Firm's representation of Bolick and Van Epps constituted a conflict of interest.[5] Accordingly, since there was conflicting evidence presented on the issue of conflict of interest, the trial judge did not err in failing to grant a directed verdict to Van Epps.[6]

## VI. Attorney's Fees

Van Epps claims the trial judge erred in refusing to direct a verdict in her favor on the issue of attorney's fees. She asserts the trial judge should have directed a verdict in her favor because Law Firm was not entitled to $52,120 in uncollected attorney's fees in light of its legal malpractice and conflict of interest. However, because we found the trial judge did not err in denying Van Epps' directed verdict motions as to her claims for legal malpractice and conflict of interest, we also find the trial judge did not err in denying her

---

5. We need not decide whether an attorney licensed to practice law in this state is necessarily competent to testify as an expert in the field of legal ethics because Van Epps, although initially objecting to Wilson's qualification in this field, has not raised the issue of Wilson's qualifications on appeal.

6. Because the conflict of interest issue was a part of Van Epps' overall claim for legal malpractice, our disposition of this issue does not preclude Van Epps from re-trying the conflict of interest issue at her new trial. Furthermore, because our decision to affirm the denial of Van Epps' directed verdict motion is based on the record before us, our decision does not impact Van Epps' ability to move for a directed verdict on this issue at her new trial.

motion for directed verdict on the issue of attorney's fees.[7] *See Pike,* 332 S.C. at 610, 506 S.E.2d at 518 (requiring the appellate court to affirm the denial of a directed verdict motion when there is any evidence to support the ruling below). However, because the issue of attorney's fees is inextricably linked to Van Epps' conflict of interest claim, the issue of attorney's fees is also remanded to be determined *de novo* at the new trial.

## CONCLUSION

For the foregoing reasons, the decision of the trial judge is **AFFIRMED IN PART, REVERSED IN PART, and RE-MANDED.**

HEARN, C.J., HOWARD, and KITTREDGE, JJ., concur.

---

7. We again note that our decision to affirm the denial of Van Epps' motion for directed verdict as to attorney's fees is based exclusively on the record before us. On remand, Van Epps may again move for a directed verdict on this issue, and the trial judge shall rule on her motion based upon the evidence presented at the new trial.