THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Carrie Pasley, Respondent,
v.
Marvin Pasley, Appellant.
 
 
 

Appeal From Charleston County
Frances P. Segars-Andrews, Family Court Judge

Unpublished Opinion No. 2006-UP-176
Heard February 8, 2006  Filed March 28, 2006   

AFFIRMED IN PART AND REMANDED IN PART

 
 
 
Alexander Blair Cash, of Charleston, for Appellant.
George E. Counts, Kelvin M. Huger, of Charleston, for Respondent.
 
 
 

PER CURIAM:  Marvin Pasley (Husband) appeals a family court order asserting the court erred in determining four vehicles purchased by Husband after the date of filing and income earned by Husband from his sole proprietorship after the date of filing constituted marital property, in failing to reduce the value of the marital estate by the amount of outstanding tax debt, and in awarding retroactive alimony.  We affirm in part and remand in part.
FACTUAL/PROCEDURAL BACKGROUND
Husband and Carrie Pasley (Wife) were married on May 23, 1987 and separated on May 27, 1999.  Shortly after the marriage, Husband began serving as a Minister in the African American Episcopal Church.  In 1989, Wife was diagnosed with sarcoidosis.  Wife worked as a dental hygienist at the time the parties married and continued to work in this field for approximately twenty years, until Wife ultimately became disabled.  Wife also performed various functions in her role as a ministers wife.  In 1995 Pasleys Mortuary was opened, with Husband as the sole-proprietor of the business.[1]  Wife began working at the funeral home business in 1994, prior to its opening, and continued to work there until the latter part of 2000.  In addition to the sarcoidosis, and a stroke she suffered in 1999, Wife suffers from depression, anxiety disorder, sleep apnea, chronic sinusitis, a spastic colon, acid reflux, a hiatal hernia, and damaged lungs.  
On March 21, 2001, Wife filed a complaint seeking, among other things, a divorce based on the parties one-year separation, alimony, equitable distribution, and attorneys fees.  Husband answered and counterclaimed for a divorce on the ground of adultery.  Following a hearing in April 2001, the family court issued a temporary order awarding Wife $600 per month in alimony and temporary attorneys fees.  Because the trial began in December of 2003 and did not conclude until March 2004, the family court issued an interim order on December 19, 2003 increasing Husbands alimony obligation to $1,400 per month based on Husbands stipulation to his greater income than reported on his financial declaration filed in January 2003.  
At the conclusion of the hearing on March 16, 2004, the family court judge found Husband has lied to this court and tried to hide income.  The court ordered that assets in a First Citizens account be frozen, and prohibited the use of the account until further order of the court.  
On April 1, 2004, the family court issued its final order granting Wife a divorce based on one years separation.  In its order, the court found Husband secreted approximately $192,000.00 in a bank account which Husband refused to disclose or discuss during the pendency of this litigation, and which was only discovered by Wife the day before the last day of trial.  The family court found Wife was completely disabled.  It further held, while Husband claimed on the last day of trial that he earned only $20,000 a year as a minister and profit of $13,142 a year from the funeral home business, Husbands testimony was incredible, and based on Husbands receipt of over $70,000 in cash from the funeral business in 2003, as well as the money in the First Citizens account, Husband was earning in excess of $80,000 a year for the past three years.  The family court therefore determined Wife was entitled to permanent, periodic alimony in the amount of $1,900 a month, as well as $42,300 in back alimony from the time of filing.  The court further found that the parties marital property consisted of the following:  (1) personal effects, which were divided by agreement of the parties; (2) the marital home with a net equity of $63,184; (3) Pasleys Mortuary with a net equity of $66,100; (4) Husbands retirement account valued at $22,330.98; (5) several bank accounts amounting to $55,100; and (6) a First Citizens account with a balance of approximately $192,000.  The court awarded the marital home to Wife, the funeral business to Husband, and ordered a 50% division of the remaining marital assets.  The court further awarded Wife the entire amount of her attorneys fees and costs of $22,420.  In addition to the final order, the family court issued an order in June 2004, holding Husband in contempt of court for failing to disclose the existence of the First Citizens account.  Thereafter, Husband made a motion to alter or amend the judgment.[2]  This appeal followed. 
STANDARD OF REVIEW
In appeals from the family court, this court has    authority to find facts in accordance with its own view of the preponderance of the evidence.  Dearybury v. Dearybury, 351 S.C. 278, 283, 569 S.E.2d 367, 369 (2002).  This broad scope of review does not, however, require us to disregard the findings of the family court.  Wooten v. Wooten, 364 S.C. 532, 540, 615 S.E.2d 98, 102 (2005).  Neither are we required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.   Id.
LAW/ANALYSIS
I.                  Marital Property
Husband first claims the family court erred in determining what assets constitute the marital estate.  He raises two issues in this respect.  Husband asserts error in the inclusion of four vehicles valued at $30,300 that were purchased for the funeral home after the date of filing.  He also asserts error in the inclusion of monies in the First Citizens account beyond the initial deposit of $63,432.
Marital property is generally defined as all real and personal property acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation, regardless of how legal title is held.  S.C. Code Ann. § 20-7-473 (Supp. 2005).  For purposes of equitable distribution, the value of marital property is thus the value of the property at the time of the commencement of the marital litigation.  Arnal v. Arnal, 363 S.C. 268, 292-93, 609 S.E.2d 821, 834 (Ct. App. 2005).  However, both parties are entitled to share in any appreciation or depreciation that occurs to marital property after separation but before divorce.  Id. at 293, 609 S.E.2d at 834.
A.      Vehicles
Husband presented evidence that he purchased the vehicles in 2002 and 2003, after Wife commenced this divorce proceeding on March 21, 2001.  He contends, because it is uncontested the vehicles were all purchased after the date of filing, they are clearly nonmarital and should not have been included in the marital estate.  We disagree.
The family court found the funeral home business was a marital asset owned by Husband and Wife.  In determining the value of the funeral home, the family court found it included (1) $100,000 for the land and building, (2) $3,800 for furniture, fixture and equipment, (3) $30,300 for the four vehicles, based on Husbands appraised value, and (4) an outstanding mortgage of $68,000, for a net equity in the business of $66,100.  On appeal, Husband asserts the family court erred in including the $30,300, as the vehicles were not owned at the date of filing of marital litigation and were therefore nonmarital property.  Wife counters that the newly purchased vehicles only replaced similar assets already owned by the business before filing.  We find no error in the inclusion of these vehicles in the marital estate.  
First, there is evidence of record that clearly shows Husband routinely purchased vehicles for use in the business.  He testified he had purchased about five or six hearses alone in the past, and stated he had never been able to purchase brand-new hearses, but only used ones, and after the old ones stopped running, he would get rid of them.  Further, the testimony of record shows there was a previous appraisal showing a value of $15,375 for funeral home vehicles, which Husband testified was for older vehicles than those on the present appraisal, and the $15,375 figure was a good faith estimate . . . at that time.  Husband also admitted that a lot of the cash that [he] pulled out of the business was to purchase vehicles.  While there is no indication in the testimony as to when the vehicles on this previous appraisal were purchased,[3] there is sufficient evidence for the court to conclude that the funeral home has always operated with the use of limousines and hearses.  Finally, common sense dictates that the business could not have operated without the use of support vehicles.  Therefore, we agree with Wife that the vehicles included in the value of the business were, at the very least, replacement vehicles.  Further, we find any appreciation in the business resulting from the addition of the new vehicles was properly included in the marital estate.  See Hatfield v. Van Epps, 358 S.C. 185, 194, 594 S.E.2d 526, 531 (Ct. App. 2004) ([T]he parties to domestic litigation are entitled to share in any appreciation or depreciation in marital assets occurring after separation but before divorce.); Bowman v. Bowman, 357 S.C. 146, 159 n.8, 591 S.E.2d 654, 661 n.8 (Ct. App. 2004) (recognizing that passive post-filing changes in the appreciation or depreciation of marital assets may be considered by the family court in determining an equitable apportionment of the marital estate.); Dixon v. Dixon, 334 S.C. 222, 228, 512 S.E.2d 539, 542 (Ct. App. 1999) (It is an unfortunate reality that, given the volume of cases handled by our family courts, there often is a substantial delay between the commencement of an action and its ultimate resolution.  Thus, it is not unusual for the value of marital assets to change, sometimes substantially, between the time the action was commenced and its final resolution.  In such a case, the family court has the ability to consider the post-filing appreciation or depreciation when valuing and apportioning the marital estate.).
B.      First Citizens Account
The issue concerning the secreted account is more complicated.  The record shows the final hearing on the parties divorce was held over several days in December 2003, January 2004, and March 2004.  During the hearing in December, Husband apparently did not appear for medical reasons.  When the hearing continued in January 2004, Husband appeared and testified on his own behalf.  Husband claimed, that for tax year 2001, his tax return reflected the funeral business had net earnings of only $3,140.  Husband further maintained his salary as a minister in 2001 was approximately $20,000.  Husband testified that in tax year 2002, his church salary dropped when he was assigned to another church and he earned between $379 and $500 a week during that time.  He claimed the funeral business netted a profit of only $6,093 in 2002, and that he put all of that money back into the business.  Husband testified he had [n]o other income from anywhere.  Husband also claimed he had approximately $359 in his personal account at First Federal, and he did not have any personal funds in any other account.  
The trial resumed on March 16, 2004, with Husband still on the stand.  Husband admitted, that after his initial cross-examination, he filed an amended tax return for 2002 reflecting earnings of $13,142 for the funeral business during that tax year.  During redirect examination, Husband disclosed the existence of another account.  Counsel asked Husband if he knew someone by the name of Oneil Wilder.  Husband testified Wilder was a friend of his, and stated he handled some of Wilders business affairs.  When asked if he handled an account for Wilder, Husband stated Wilder had an account with Husbands name on it.  When asked if the money in the account belonged to Wilder, Husband claimed part of the money was Wilders, and that Wilder put me down as a signer for it.  Husband claimed both his and Wilders money was deposited into the account, he did not know what money was his and what money belonged to Wilder, and he believed Wilder deposited around $80,000 into the account.  When asked how the account was started, Husband maintained that Wilder put around $80,000 in the account originally, and that Husband did not put anything in there at that time, but he periodically made deposits into the account.  Husband stated he did not know the exact amount of money in the account at that time.  On cross-examination, Husband acknowledged he made various deposits into the account and wrote numerous checks out of the account.  Husband maintained he wrote many of the checks to pay funeral business bills.  He claimed at least one of the deposits made into the account was from money he took out of the funeral home account.  When asked where he obtained the money that he deposited into the First Citizens account, Husband stated he had worked since he and Wife separated, implying the money deposited into this account was from his post-separation earnings.  
On April 1, 2004, the family court issued its final order finding the First Citizens account was a marital asset that was to be equitably divided.  The court included the approximately $192,000 in the account in the marital estate and found the marital estate should be divided equally between the parties.  On this date, the family court also held a hearing on Husbands Citation for Contempt.  Thereafter, on June 22, 2004, the family court issued its order finding Husband in contempt of court based on his willful testimony regarding and his nondisclosure of the First Citizens account.  The court fined husband $1,500 and ordered him incarcerated for six months, with the detention held in abeyance conditioned upon Husbands performance of three hundred hours of community service.  The record does not contain any transcript from the contempt hearing.
On April 12, 2004, Husband filed a motion to alter or amend the final order of divorce.  In that motion, Husband argued, among other things, that the family court erroneously included monies from the First Citizens account that were acquired by him as income after the date of filing of marital litigation.  While Husbands motion is included within the record before us, there is no transcript from any hearing on the motion, nor is there any order from the family court showing disposition of the motion. 
On appeal, Husband alleges that the First Citizens account, with a balance of $192,053, should not have been considered as marital property beyond the $63,432 initially used to open the account a few days after Wife filed for divorce.  He asserts the account included his income earned after the date of filing, and that it was his earnings and savings that made the account grow to a balance of $192,053.  Thus, he contends that $128,621 of the total balance in the account constitutes nonmarital earnings and this amount should be deducted from the marital estate.  Wife counters that the $128,621 is either marital property, or it is non-marital property subject to equitable apportionment by virtue of Husbands actions which transmuted it into marital property, or that she is entitled to a special equity in the $128,621.  Wife does not explain why the $128,621 is marital property, but generally argues that she is entitled to equitable distribution of this amount because she made significant contributions to the business and because Husband used $63,432 in marital assets to continue to operate the funeral business, thereby allowing the accumulation of $128,621 more in the account.  
Husband concedes that it was reasonable for the family court to conclude the initial deposit of $63,432 in the account was marital.  The only evidence of record before us as to the source of the other deposits is from husbands testimony that at least one deposit of $3,000 came out of the funeral home account, and Husbands general testimony that other deposits resulted from his work in the business.  However, Husband admittedly perjured himself during his testimony and his credibility is, at the very least, suspect.
The family court did not explain why it determined the entire $192,000 account was marital property.  Based on the record before us, it is impossible for this court to determine whether the entire account was found to have been marital based upon the source of the initial deposit as well as the source of subsequent deposits, whether the court determined the initial deposit was marital and the rest of the account was transmuted into marital property by virtue of Husbands commingling of funds, or whether the court had some other basis for finding the entire account was marital.  While the Wife asserts, pursuant to S.C. Code Ann. § 20-7-473(5) (Supp. 2005),[4] she is entitled to any increase in value in nonmarital property . . . result[ing] directly or indirectly from [her efforts] during the marriage and that a special equity was thereby created in the $128,621, there was no finding by the family court to support this argument.  Additionally, the $128,621 would not qualify as an increase in value of nonmarital property, as the family court determined the entire account was marital.[5]
It is uncontested the initial deposit is marital property.  It is also clear at least some portion of the initial deposit generated interest to increase the account.  Thus, wife is undoubtedly entitled, at a minimum, to an equitable share in the initial deposit and any appreciation resulting directly from the initial deposit in the form of interest.  See Hatfield v. Van Epps, 358 S.C. 185, 194, 594 S.E.2d 526, 531 (Ct. App. 2004) ([T]he parties to domestic litigation are entitled to share in any appreciation or depreciation in marital assets occurring after separation but before divorce.)  However, there is an insufficiency or paucity of evidence and rulings in the record for this court to determine the basis of the family courts classification of the entire asset as marital property.  Accordingly, we remand this issue to the family court for a determination of what portion of the total account is marital and what portion, if any, is income of the Husband that would not be subject to equitable apportionment, with leave for the court to take additional testimony on the source and use of the funds in this account.  The family court shall exclude any income in the account attributable to earnings by Husband after the date of filing.         
II.              
Tax Debt 
Husband claims the family court erred in failing to reduce the value of the marital estate by the amount of outstanding tax debt resulting from his filing of amended tax returns.  He asserts the amended returns revised his taxable income resulting in tax liabilities of $29,786 for tax year 2000, $30,623 for tax year 2001, and $34,408 for tax year 2002.  Husband argues the family court was required to consider and apportion the marital debt in conjunction with its apportionment of the assets.  He maintains the family court should have equally divided the marital tax debt, which included $29,786 for the 2000 tax year and a pro-rata share of $30,623 from tax year 2001, which should be computed as of the date of filing.  
Marital debt, like marital property, must be specifically identified and apportioned in equitable distribution.  Wooten v. Wooten, 364 S.C. 532, 546, 615 S.E.2d 98, 105 (2005).  Marital debt should be divided in accord with the same principles used in the division of marital property and must be factored into the totality of equitable apportionment.  Pirayesh v. Pirayesh, 359 S.C. 284, 300, 596 S.E.2d 505, 514 (Ct. App. 2004).  In apportioning the marital estate, the family court must give weight in such proportion as it finds appropriate to liens and any other encumbrances upon the marital property, which themselves must be equitably divided, or upon the separate property of either of the parties, and any other existing debts incurred by the parties or either of them during the course of the marriage.  S.C. Code Ann. § 20-7-472(13) (Supp. 2005); Wooten, 364 S.C. at 546, 615 S.E.2d at 105.  If the family court finds a debt was not incurred for marital purposes, it need not be factored into the courts equitable apportionment of the marital estate, and the court may require payment by the spouse who created the debt for nonmarital purposes.  Hickum v. Hickum, 320 S.C. 97, 103, 463 S.E.2d 321, 324 (Ct. App. 1995).  The apportionment of marital property is within the discretion of the family court judge and his decision will not be disturbed on appeal absent an abuse of discretion.  Pirayesh, 359 S.C. at 300, 596 S.E.2d at 514.  [T]he words in such proportion as it finds appropriate, as used in § 20-7-472, accord much discretion to the trial judge in providing for the payment of marital debts as a consideration in the equitable division of the marital estate.  Hickum v. Hickum, 320 S.C. at 103, 463 S.E.2d at 324.  On review, the appellate court will look to the fairness of the overall apportionment.  Id. 
We agree with Husband that the family court was required to consider and apportion any marital debt in conjunction with its apportionment of the assets.[6]  However, we disagree with Husbands assertion that the family court was required to equally divide the tax obligation.  See Pirayesh, 359 S.C. at 300, 596 S.E.2d at 514 (wherein this court found no error in the family courts failure to equally split the parties debts between them).  Rather, the family court has much discretion in apportioning the debt in such proportion as it finds appropriate.  We further note, while the initial tax obligation for 2000 and the portion of 2001 prior to filing may have been incurred for the joint benefit of the parties, the same cannot be said of the penalties and interest assessed on the tax obligations.  Rather, penalties and interest were incurred, not for the benefit of the marriage, but because of Husbands failure to initially file a correct return reflecting his true income.  We thus find any penalties and interest should be the sole responsibility of Husband.  Accordingly, we remand this matter to the family court to determine what tax debts were incurred for the benefit of the marriage and to apportion any such debt consistent with this opinion.[7]    
III.          
Retroactive Alimony 
Finally, Husband complains the family court erred in awarding Wife retroactive alimony because the award constituted a double recovery for Wife.  He argues the family court found he made in excess of $80,000 based upon evidence of his receipt of over $70,000 in cash from the funeral business in 2003, as well as money deposited in the First Citizens account.  Accordingly, the court concluded it was appropriate to relate Husbands receipt of this income back to the time of filing, and calculated back alimony due of $42,300.  Husband asserts the family court implicitly held his earnings after the date of filing constituted a marital asset subject to division and additionally required Husband to pay back alimony out of these same funds.  He thus contends it was error for the court to award retroactive alimony based on these earnings while also treating the $128,621 earned income in the First Citizens account as a marital asset, as this amounts to a double recovery to Wife.  Because we have remanded the issue of the First Citizens account to the family court with instructions to exclude any income in the account that was earned by Husband after the filing date, any of the complained of double recovery by the Wife will be eliminated.  
For the foregoing reasons, the order of the family court is
AFFIRMED IN PART AND REMANDED IN PART.  
GOOLSBY, HUFF, and STILWELL, JJ., concur.

[1]The business is referred to as both Pasleys Mortuary and Pasleys Funeral Home throughout the transcript.  
[2]There is no evidence in the record that the family court ever ruled on this motion.
[3]The testimony regarding the $15,375 appraisal refers to Plaintiffs Exhibit 12, which is not included in the record on appeal.  We note that the burden is upon appellant to provide a sufficient record from which this court can make an adequate review.  See Wint v. Wint, 310 S.C. 48, 50, 425 S.E.2d 48, 50 (Ct. App. 1992). 
[4]This code section provides [t]he term marital property as used in this article means all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation . . ., except the following, which constitute nonmarital property: . . . (5) any increase in value in nonmarital property, except to the extent that the increase resulted directly or indirectly from efforts of the other spouse during marriage.
[5]We note in Cannon v. Cannon, 321 S.C. 44, 467 S.E.2d 132 (Ct. App. 1996), this court determined where one spouse used marital funds to purchase property after the commencement of marital litigation, the family court properly awarded the other spouse a special equity in the property.  However, we recognized in Cannon that the thirty-nine acres of property acquired after the filing date but purchased with marital funds was nonmarital property as it did not exist at the time of filing.  Here, the family court found the First Citizens account was marital property.  Neither party challenges the determination that at least the initial deposit of funds was marital property.  Accordingly, it is the law of the case.  Bakala v. Bakala, 352 S.C. 612, 632, 576 S.E.2d 156, 166 (2003); Haselden v. Haselden, 347 S.C. 48, 59, 552 S.E.2d 329, 334 (Ct. App. 2001).  
[6]We note that it does not appear in the record before us that the issue of tax debt was raised until Husbands motion to alter or amend.  It is not clear when the revised tax liabilities were admitted into evidence, but it appears this may have occurred April 1, 2004 during the contempt hearing.  Husband did raise the issue in his motion to alter or amend.  However, as previously noted, there is no transcript from either the contempt hearing or from any hearing on Husbands motion to alter or amend in the record.  Neither is there an order on the motion to alter or amend.  
[7]As an additional issue, Husband argues, assuming the family court correctly included his post-filing earnings and acquisition of new assets in the marital estate, the value of the marital estate should have been reduced by the entire amount of the tax obligation totaling $94,818.06 for the tax years 2000, 2001 and 2002.  In light of our disposition of these matters and, specifically, the remand to the family court on the post-earnings matter, we find it unnecessary to address this issue.