19859

Myra W. TERRY, Executrix of the Estate of James C. Terry, Appellant, v. Lawrence E. BRASHIER, Respondent

(207 S. E. (2d) 82)

*Messrs. Horton, Drawdy, Marchbanks, Ashmore, Chapman & Brown,* of Greenville, *for Appellant,*

*Melvin K. Younts, Esq., of Younts, Reese & Cofield,* Greenville, *for Respondent,*

July 15, 1974.

BUSSEY, Justice:

This is an equitable proceeding commenced by plaintiff's testate, James C. Terry, on October 19, 1972 and continued by his executrix, as substituted plaintiff, after the death of said Terry in early February, 1973. The complaint sought the dissolution of an alleged partnership between Terry and the respondent, an accounting, appointment of a receiver and other incidental relief. The cause was referred to the Master in Equity for Greenville County and the appeal here is from an order of the Greenville County Court affirming a report of the Master wherein it was found and held that no partnership relation existed between the parties.

The sole question upon appeal is whether the lower court erred in finding that the plaintiff had failed to prove the existence of a partnership. Both the appellant and respondent recognize that while this Court has the power and jurisdiction in appeals in equity to find the facts in accord with its view of the preponderance or greater weight of the evidence, nevertheless, the settled general rule is that findings of fact by a Master, concurred in by the trial court in an equity case will not be disturbed by the Supreme Court on appeal unless it appears that such findings are without evidentiary support, or against the clear preponderance of the evidence. See numerous cases collected in West's South Carolina Digest, Appeal and Error, Key No. 1022.

In our view only a relatively brief statement of the high-lights of the case, gleaned from a rather voluminous record and numerous exhibits, is essential to a decision of the appeal. J. C. Terry and his wife, Myra, lived on a farm in lower Greenville County and had no children of their own. They adopted by deed, but not a court decree, a daughter, Dorothy, whom they raised as their only child; they apparently not realizing that they had failed to legally adopt her until sometime later. In 1947 the daughter Dorothy married the respondent in this case, Brashier; the Brashiers living for the first year of their married life in the home of the Terry's. Thereafter they moved into a smaller home on the Terry farm. A portion of the farm, where the Brashiers lived, was later conveyed to Mrs. Brashier. Brashier at the time of his marriage was employed in the textile industry but gradually went into farming.

About 1955 Braisher and Terry each owned about five or six cows, each selling some milk commercially. In the fall of that year the two combined their herds and equipment, but under no formal written or oral agreement. This dairy operation on the Terry farm, small in its inception, had grown until in 1972 the dairy herd numbered about 50, not counting calves and dry cattle. When the two small herds were combined in 1955, or 1956, Mr. Terry was preparing to start drawing social security and to at least partially, if not completely, retire. Within a year or two thereafter, he ceased farming all together and the evidence is conflicting as to how much he worked about the dairy business although clearly he worked less and less as the years went along. No one other than Terry and Brashier knew precisely what agreement, if any, they had between them for the operation of the dairy, but from the inception, so far as the public was concerned, the dairy business belonged to, and was actively operated and developed by Brashier individually, in his sole name, he devoting his fulltime thereto, signing all contracts, paying all bills and all new equipment being purchased in his name.

Whatever the arrangement between the parties it was apparently satisfactory to both until Mr. Terry suffered a stroke in February, 1972, following which his brother-in-law, one Mr. Wood, began to concern himself with Mr. Terry's affairs and from that point on Braishier was not allowed to see or talk to Mr. Terry alone. Mr. Terry's deposition was taken in November, 1972, he then being 82 years of age and that neither his mind nor his memory were any too clear is obvious from the deposition. While some parts of Mr. Terry's testimony tend to support a conclusion that the relationship between the parties was that of a partnership other portions thereof would support a contrary inference. Much of what he did testify to, tending to prove any element of a partnership, was elicited by leading questions.

Strongly relied upon by the appellant as proving the partnership is the fact that Mr. Brashier periodically submitted to Mr. Terry a semi-monthly profit and loss statement showing the progress of the dairy. According to the respondent there was never a partnership agreement, either written or oral but that under the agreement Mr. Terry was to be paid or receive only rent. That in the beginning he, Brashier, did not have any operating capital and it was agreed that he would keep 50% of any net profit to live on; was to pay a laborer out of the other 50%, since Mr. Terry was not able to do heavy labor and give the remainder thereof to Mr. Terry periodically. That at the end of each 12 months they would have a settlement and adjust these periodic payments to Mr. Terry against the rent due him for the year. The record shows that Terry received from Brashier and receipted therefor rent in the following amounts: 1957 $400; 1958 $1400; 1959 $1500; 1960 $2300; 1961 $2300 and in 1962 and each year thereafter the sum of $3,000.

The record further shows that Terry and Brashier went together each year to a lawyer who prepared tax returns for each of them which they each signed after going over all of

the figures with counsel. These tax returns are fully consistent with each other and clearly reflect a declaration by both parties, under penalty of perjury, that the dairy was owned and operated by Brashier with him paying taxes on the net profit of the dairy after taking deductions for depreciation, rent and other business expenses and Terry reporting as income from the dairy operation only the rent paid to him by Brashier.

Admittedly there is some evidence which might give rise to the inferences that there was an agreement to share profits and losses; a community of interest in control and management and a community of interest in capital and property, all of which are the significant badges of a partnership.

It is important to note, we think, that some of the personal property involved in the dairy venture in its early stages was admittedly given to Brashier by Terry. With respect to the day to day mangement or control there is no evidence of substance that Terry exerted any such. Brashier admittedly consulted and advised with Terry as to all major decisions which, apart from any agreement, was only natural since they both naturally desired the operation to be successful and permanent improvements were being made upon the Terry farm which, the record shows, both parties anticipated would one day belong to Mrs. Brashier.

The issue before us is not, however, whether there is any evidence tending to prove the existenc of a partnership, but rather whether the finding below that no such relationship existed, was without support in the evidence or against the clear preponderance thereof. The facts hereinabove recited, which are disclosed by the record, are sufficient to show that the finding had full support in the evidence and we find nothing in the record to indicate that such finding was contrary to the clear weight thereof. Indeed, we conclude that the finding that no partnership existed is supported by the clear preponderance of the evidence. The judgment below is accordingly,

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.