## 1508

David HALBERSBERG, Respondent v. William BERRY, Catherine M. Berry and Fun Fashions, Inc., Appellants. David HALBERSBERG, Respondent v. William BERRY, Appellant.

(394 S.E. (2d) 7)

Court of Appeals

*John P. Henry* and *Emma Ruth Brittain* of *Thompson, Henry, Gwin, Brittain & Stevens*, Conway, *for appellants.*

*Howell V. Bellamny, Jr.*, and *Preston B. Haines, III* of *Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers*, Myrtle Beach, *for respondent.*

Heard April 18, 1990.

Decided May 29, 1990.

CURETON, Judge:

The central issue in this appeal is whether partnership relationships existed between Appellants, William and Cather-

ine Berry, and the Respondent, David Halbersberg. The Berrys appeal from a holding that partnership relationships existed and the Berrys should account to Halbersberg for profits and damages. We affirm as modified.

The Berrys own Fun Fashions, Inc., a sewing operation in Myrtle Beach, South Carolina, which manufactures t-shirts and other beachwear clothing. Halbersberg is a wholesale distributor of beachwear and owns two retail beachwear establishments in the area.

Halbersberg used the Berrys alleging the parties had entered into two oral partnership agreements and the Berrys had breached both. The first agreement involved the manufacture and sale of "neon" t-shirts and sweatshirts. The second involved renting a parcel of land and erecting a building on it to serve as a retail outlet for beachwear.

The Berrys denied the existence of both partnerships. They claimed the first agreement was nothing more than a contract sewing agreement which was fully performed. As to the second agreement, the Berrys claimed Halbersberg had abandoned the lease/building project prior to the time they took it over.

The cases were consolidated and referred to a master who decided in Halbersberg's favor. The circuit court confirmed the master's report. The Berrys appeal. Without sorting out the characterization of these actions as equitable or legal,[1] we note that in any event the imposition of the two judge rule necessarily limits our scope of review to a determination of whether there is any evidentiary support for the findings of fact or whether such findings are against the clear preponderance of the evidence. *Ward v. Ward Farms, Inc.,* 283 S.C. 568, 324 S.E. (2d) 63 (1984); *Edwards v. Rouse,* 290 S.C. 449, 351 S.E. (2d) 174 (Ct. App. 1986).

---

[1] Halbersberg's complaint prays for a dissolution of the partnership, an accounting, a winding up of the partnership affairs, and damages for wrongful dissolution all pursuant to Title 33 of the South Carolina Code. Halbersberg also sued the Berrys for damages for fraudulently inducing him to enter in the partnership and for breach of contract. Additionally, Halbersberg sued in quantum meruit. The second action prayed for a court declaration the parties had a partnership relative to the lease of a piece of property and the erection of a building thereon. The suit also asked for the imposition of a constructive trust as to any profits from the business and for damages for the breach of this partnership agreement.

## T-SHIRT PARTNERSHIP

The master found the parties orally formed a partnership to purchase and manufacture neon t-shirts. He further found the terms of the partnership were that Halbersberg would provide the financing to buy the materials, the Berrys would provide the facilities and labor for manufacturing the shirts, both would arrange the sales of the t-shirts, and the Berrys would keep all books and records. The parties were to split profits 50 percent to Halbersberg and 50 percent to the Berrys.

A partnership agreement may rest in parol. It may be implied and without express intention. *Wyman v. Davis*, 223 S.C. 172, 74 S.E. (2d) 694 (1953). To establish a partnership there must be an association of two or more persons to carry on as co-owners a business for profit. *Buffkin v. Strickland*, 280 S.C. 343, 312 S.E. (2d) 579 (Ct. App. 1984); *S.C. Code Ann.*, Section 33-41-210 (Rev. 1990). The following tests are appropriate in determining whether a partnership exists: (1) the sharing of profits and losses; (2) community of interest in capital or property; and (3) community of interest in control and management. *Terry v. Brashier*, 262 S.C. 639, 207 S.E. (2d) 82 (1974).

Berry maintains the evidence supports only a finding that the relationship between the parties was a contract sewing business, i.e., Berry contracted to manufacture the shirts for Halbersberg. We disagree. There is ample evidence in the record from which the court may have determined that it was the intention of the parties to form a partnership. Halbersberg testified the parties agreed he would buy the material in his name and Berry would manufacture the t-shirts. The two would jointly sell the shirts. Berry would keep the books of the enterprise. Expenses would be paid then profits from the operation split fifty-fifty between Halbersberg and the Berrys. Losses would be shared in the same manner. There was also testimony the parties, at least initially, shared management decisions. While some of this testimony was disputed, the master as the trier of the facts was the best judge of the credibility of the witnesses. *See Klutts Resort Realty, Inc. v. Down' Round Dev. Corp.*, 268 S.C. 80, 232 S.E. (2d) 20 (1977). It is clear the master simply discredited much of the Berrys' evidence. We find no error.

The Berrys next argue the master erred in finding they breached the partnership agreement by failing to keep proper records. They argue Mrs. Berry kept adequate records by an invoice system agreed to or acquiesced in by the parties. Halbersberg points to testimony supporting the court's finding the Berrys breached the partnership agreement by failing to keep proper records. Memory Smith, the court appointed accountant, testified no books *per se* were turned over to him by the Berrys. He pointedly noted the parties would not be in court if proper records had been kept. It is apparent the records kept by the Berrys were woefully inadequate to reflect the financial condition of the partnership. Mrs. Berry, who testified she was charged with keeping the records, admitted monies were commingled and some sales and purchases were not recorded. We hold the evidence supports the master's finding on this issue.

The Berrys next complain the amount of the judgment is excessive because Smith miscalculated the waste involved in manufacturing t-shirts and thus the financial statements prepared by him show an excessive profit. By way of explanation, Smith testified that since the records turned over to him by the Berrys did not accurately reflect the number of t-shirts manufactured and sold, he resorted to other means to determine the actual number of shirts manufactured and sold by the Berrys. He did this by first determining the total amount of material purchased by the partnership. Thereafter, by utilizing data furnished him by another manufacturer, he determined the number of t-shirts the Berrys should have been able to generate from those materials. By comparing the number of shirts actually accounted for by invoices[2] with the number of shirts the Berrys should have been able to cut from the materials purchased and on hand, Smith was able to form an opinion as to how much unaccounted for material was involved. He valued this unaccounted for inventory at $54,435.85.

The Berrys' principal argument on appeal is the accountant relied on inadmissible hearsay evidence from another manufacturer in arriving at the value of the missing inventory. We

---

[2] Numerous invoices were missing as indicated by missing and nonsequential numbers.

hold the argument is without merit. On direct examination, the accountant testified he contacted an independent source to determine the value of the missing inventory. He then testified that based on the data supplied him he valued the missing inventory at $54,435.85. Later in his testimony the accountant again made reference to the outside source. No objection was made to this testimony nor did the Berrys move to strike the testimony. When the accountant later sought to describe in detail his contacts with the independent source, Shirt Depot, Inc., of Elgin, Alabama, the Berrys objected to the testimony as hearsay. The court admitted the testimony subject to the Berrys' objection. The accountant testified he had been furnished certain mathematical formulas to use in figuring the number of shirts the material should have produced and the equation had a built-in waste factor. Halbersberg also testified without objection regarding some of this same data and the fact the equation had built-in waste factors.

The Berrys did not object at trial to the testimony of the accountant as beyond his area of expertise. Their objection went solely to the admissibility of the accountant's testimony because it was based on data furnished him by an out-of-court declarant. They argue the court should afford little weight to the accountant's calculation of the amount and value of the missing inventory because the best evidence of whether there was missing inventory came from their witnesses not the accountant. Their contention is the mathematical formulas used by the accountant did not properly account for wastage. They argue application of the proper wastage factors would demonstrate the number of shirts represented by the invoices consumed all of the inventory in question and thus there was no missing inventory.

An expert witness may state an opinion based on facts not within his firsthand knowledge. *Harris v. Campbell*, 293 S.C. 85, 358 S.E. (2d) 719 (Ct. App. 1987). He may base his opinion on information, whether or not admissible, made available to him before the hearing if the information is of the type reasonably relied upon in the field to make opinions. J. Dreher, *A Guide to Evidence Law in South Carolina* 20 (Thames Rev. 1979). Also, an expert may testify as to matters of hearsay for the purpose of showing what in-

formation he relied on in giving his opinion of value. *United States v. 5139.5 Acres of Land in Aiken and Barnwell Counties*, 200 F. (2d) 659 (4th Cir. 1952). The admissibility of the testimony of an expert on a fact in issue is largely within the discretion of the trial court. *S.C. Dept. of Social Services v. Bacot*, 280 S.C. 485, 313 S.E. (2d) 45 (Ct. App. 1984).

We hold the trial judge did not err in admitting the testimony of the accountant relative to the data received from the independent source. It has not been shown the data was so unreliable as to invalidate the accountant's opinion regarding the missing inventory. Of course, the trial court, not this court, weighs conflicting evidence.

Berry next contends the master improperly failed to consider unauthorized discounts Halbersberg gave to customers. Halbersberg admitted giving discounts, but maintained the Berrys authorized them. Although presented to him, the master did not explicitly rule on this issue. The Berrys did not bring this omission to the master's attention by way of a Rule 52(b) or 59(e) motion and are effectively precluded from arguing the issue before this court. *See Talley v. S.C. Higher Education Tuition Grants Comm.*, 289 S.C. 483, 347 S.E. (2d) 99 (1986). Moreover, our review of the record convinces us the Berrys knew about and approved or acquiesced in the discounts.

As part of the accounting, Smith did an inventory of unsold and unfinished sweatshirts and raw materials. Smith included in the financial statement a value for this inventory based upon the actual cost of the materials. The Berrys claim this is error. Mrs. Berry testified this inventory was worthless because neon t-shirts are out of style. We find no error. Assessing the credibility of Mrs. Berry's testimony is a function of the trial court, not this court on appeal. *Southeastern PVC Pipe Mfg., Inc. v Rothrock Constr. Co., Inc.*, 280 S.C. 498, 313 S.E. (2d) (Ct. App. 1984).

The Berrys next assert the financial records prepared by Smith were inaccurate and unreliable because the evidence does not support the fact that a $20,000 loan was made by Halbersberg to the partnership. They first claim Smith's testimony that Halbersberg made the loans is incredible. Secondly, they claim that as a minimum the amount should be reduced to $18,200 because Halbersberg testified

he repaid himself $1800.00 from sales receipts. Again, the resolution of matters of credibility is left to the trier of facts. *Id.* As to the repayment of the $1800.00, we hold all of the evidence shows Halbersberg was repaid that sum. We therefore modify the award to Halbersberg by a reduction of $1800.00

### BUILDING/LEASE PARTNERSHIP

The master found Halbersberg and Berry orally agreed to form a partnership for the purpose of leasing a lot in Myrtle Beach and constructing a building on the property to be occupied by the partnership or leased to a third party. The master further found Berry and Halbersberg were partners with each partner sharing equally in profits and losses. The master concluded the partnership agreement had been breached by Berry and imposed a constructive trust on the lease income for the benefit of Halbersberg. The circuit court affirmed these findings.

Berry argues the circuit court's finding of a partnership agreement is not supported by the evidence. Manifestly, the evidence is conflicting regarding the intention of the parties to form this second partnership. There is evidence both parties discussed forming a partnership to lease land and construct a building. There is also evidence the parties agreed to share the expenses and profits. It is undisputed Halbersberg paid the contractor the initial $10,000 toward the construction cost of the building. Thereafter, Berry leased the parcel on which the building was being built in his own name[3] and paid the contractor the balance of the contract price. Change orders to the construction contract were billed to Bill Berry as agent for Halbersberg.

On appeal, Berry argues in its inception the building project was the sole enterprise of Halbersberg who negotiated the construction contract and he assumed control of the job only after Halbersberg abandoned the project. There is evidence in the record that Berry was involved in this project from the beginning as a partner and there was no abandonment by Hal-

---

[3] Construction on the building began prior to the execution of a written lease. Necessarily, there must have been some understanding at the commencement of the construction regarding the leasing of the building.

bersberg. We therefore sustain the holding of the circuit court on the issue of the existence of this second partnership.

The master found Berry breached a fiduciary duty owed to Halbersberg arising out of the partnership by leasing the building to himself. The master reasoned it would be inequitable to allow Berry to benefit from his wrongful conduct. The master also found Berry summarily excluded Halbersberg from the partnership while making no attempt to reimburse the $10,000 Halbersberg paid the builder.

A constructive trust arises when the circumstances under which property was acquired make it inequitable that it should be retained by the one holding legal title. *Lollis v. Lollis*, 291 S.C. 525, 354 S.E. (2d) 559 (1987). A constructive trust results from fraud, bad faith, abuse of confidence, or violation of a fiduciary duty which gives rise to an obligation in equity to make restitution. *Id.* Fraud is an essential element, although it need not be actual fraud. *Id.* A constructive trust arises against one who by fraud, actual or constructive, by duress or abuse of confidence, by commission of a wrong or by any form of unconscionable conduct, artifice, concealment, or questionable means and against good conscience, either has obtained or holds the right to property which he ought not in equity and good conscience hold and enjoy. *Briggs v. Richardson*, 288 S.C. 537, 343 S.E. (2d) 653 (Ct. App. 1986). Constructive trusts are restored to in equity to vindicate right and justice or to frustrate fraud. *Baptist Foundation for Christian Educ. v. Baptist College*, 282 S.C. 53, 317 S.E. (2d) 453 (Ct. App. 1984), *cert. granted*, 284 S.C. 366, 326 S.E. (2d) 649 (1984), *cert. dismissed*, 285 S.C. 456, 330 S.E. (2d) 287 (1985).

On appeal Berry argues the evidence does not establish the elements of a constructive trust clearly, definitely, and convincingly. Neither the master nor the circuit judge indicated in their rulings what standard of proof they applied in imposing the trust. We must assume, however, they knew the law and applied the proper standard. In keeping with our standard of review, in order to reverse the trial court, we must determine the imposition of the trust was without evidentiary support or against the clear preponderance of the evidence. We find neither.

Giving Halbersberg the benefit of any credibility determinations, we think the evidence supports the finding of a constructive trust. According to Halbersberg, after the parties agreed to the terms of the partnership, he paid $10,000 toward the construction cost of the building. Thereafter, without consulting him, Berry executed a lease in his name alone, completed the building, and exercised exclusive control of the building. Rents were collected but not shared with Halbersberg. This evidence together with other evidence in the record support the master's finding that Berry's actions were unconscionable. We, therefore, affirm the ruling of the circuit court on this issue.

Accordingly, the order of the circuit court is affirmed as modified.

Affirmed as modified.

SANDERS, C.J., and GARDNER, J., concur.