609 S.E.2d 821

**Laura Lawton ARNAL, Respondent/Appellant,**

v.

**David Emil ARNAL, Appellant/Respondent.**

No. 3943.

Court of Appeals of South Carolina.

Heard Sept. 16, 2004.

Decided Feb. 7, 2005.

Rehearing Denied March 17, 2005.

Sally G. Calhoun, of Beaufort, for Appellant–Respondent.

Susan C. Rosen, Robert N. Rosen and Donald B. Clark, all of Charleston, for Respondent–Appellant.

HEARN, C.J.:

David Arnal (Husband) appeals from the final order of the family court which granted the parties a divorce, divided the marital property, imputed income to Husband, established child support and visitation, and required him to pay attorneys' fees and guardian ad litem fees. Laura Lawton Arnal (Wife) also appeals, contesting the equitable distribution and the determination of marital property. We affirm in part, reverse in part, and remand.

## FACTS

The parties were married in 1995. In 1999, they had a son who was diagnosed with Down's Syndrome. Both prior to and during the parties' marriage, Husband was employed by Wife's father in his development company. Wife's father, Charles Fraser, was one of the main developers of Hilton Head Island, where the parties resided. The parties separated in 1999, shortly after the child was born.

Wife and child now reside in Brevard, North Carolina in a home purchased by one of two trusts under which she is a beneficiary. Father remained in Hilton Head and started his own consulting and land development business. Wife's main source of income is from the family trusts. She is also employed part time in order to be able to devote time to the child's special needs.

This case has a very litigious history. Wife initiated the action seeking custody of the child, child support, division of the property, and ultimately a divorce. Husband answered, requesting joint legal custody, equitable division, and rehabilitative or lump sum alimony.

A temporary hearing was held in January 2000, in which the parties were granted joint legal custody, with Wife having physical custody and decision-making authority with regard to the child's treatment. That temporary order granted Husband visitation in Brevard only and required him to pay $621.78 a month in child support.

In May 2000, Husband moved for a change of custody as a result of Wife's failure to begin therapies for the child. Additionally, Husband contended Wife had failed to complete the

child's vaccinations. By the time of the hearing, Wife had commenced therapy and completed the vaccinations, so the change in custody was denied.

Husband then moved to compel discovery and to amend his pleadings to seek custody of the child. In return to Husband's motion, Wife sought the following relief: psychological testing of the parties; sole custody; sanctions for Husband's failure to comply with Rule 11, SCRCP; and a restraining order against Husband. The court compelled Wife to comply with discovery, declined sanctions against Husband, dismissed the motion for a restraining order, and continued the issue of custody of the child. Wife's request for psychological testing was abandoned.

In October 2000, the family court denied Wife's request for sole custody and granted Husband overnight visitation in the Brevard area and visitation in Hilton Head once a month. A second order required Husband to answer interrogatories and produce requested documents.

Thereafter, Wife filed a rule to show cause against Husband seeking to compel him to pay his portion of the medical expenses for the child. The court found Husband in contempt and ordered him to pay the expenses and $1,000 in attorney's fees. Wife filed a subsequent rule to show cause in December 2000, after Husband failed to pay medical expenses and failed to respond to discovery requests. Husband had complied by the date of the hearing, so the court did not hold him in contempt, though it reserved the issue of legal fees, required Husband to pay the medical expenses, and ordered him to produce documents.

In February 2001, upon Wife's motion, the family court reviewed Husband's visitation. The court concluded that because the child "ha[d] been suffering illnesses since December and the final hearing in this matter [was] scheduled shortly, and since it [was] the cold and flu season" it would be in the child's best interest for all visitation to occur in Brevard rather than having the child travel to Hilton Head pending the final hearing.

Wife subsequently filed a motion to hold Husband in contempt for his failure to respond to discovery and produce documents that he claimed contained a confidentiality agree-

ment involving investment property he owned with others. The family court held Husband in contempt and ordered him to pay $10,000 in legal fees to Wife. The same order relieved Husband's counsel and appointed a new guardian ad litem for the child. Husband did not appeal the contempt order until the filing of the current appeal.

This action was tried in April 2001. In its final order, the family court granted Wife sole custody of the child and gave her the right to control all medical and educational decisions for the child. Husband received visitation on alternating weekends, but the first and third visitation of the month were required to be in Brevard rather than at Husband's home in Hilton Head. Additionally, the visitation in Brevard was limited to no more than one hour travel, and Husband was required to provide documentation to that effect. The visitation restrictions were to end when the minor reached forty-three months of age.[1]

The final order also divided the marital property. The court granted Husband the properties he acquired through his partnership and split the personal possessions. Additionally, in calculating child support, the court imputed income to Husband in the amount of $9,060.62 per month and imputed income to Wife in the amount of $5,012.40 per month. According to their sworn financial declarations filed pursuant to Rule 20, SCRFC, Husband earned $3,656 per month and Wife earned $4,750 per month. Husband was required to pay $1,564 in child support and to pay his pro-rata share (64%) of uncovered medical expenses. The court required Wife to apply for Medicaid and to research and apply for any other financial assistance available in order to pay the costs of caring for the child.

The family court ordered the guardian's fee to be paid equally by the parties up to the date of trial and required Husband to bear the full cost of the guardian's fee at trial. The court found Husband should be responsible for the full fee at trial because "the issue of visitation was tried primarily

---

1. The parties' child reached forty-three months of age on February 7, 2003. Nevertheless, this court learned during oral argument in September of 2004 that Husband is still not exercising weekend visitation in Hilton Head.

because [Husband] would not accept the Guardian ad Litem's recommendations." Finally, after analyzing the appropriate factors, the court ordered Husband to pay $65,000 in attorneys' fees in addition to the $10,000 and $1,000 awards previously ordered.

Husband filed a motion for reconsideration, challenging many aspects of the family court's order. The motion was denied in October 2001.

Subsequent to the final order, Wife filed a rule to show cause seeking to hold Husband in contempt on the grounds that: Husband failed to pay uncovered medical expenses, Husband failed to pay his August child support in full, Husband failed to provide documentation he was not traveling more than one hour from Brevard, and Husband failed to pay the remaining balance of $500 on the previous attorneys' fees award of $1,000.

The hearing was held on November 6, 2001. During the hearing, Wife presented the fee affidavit of one of her two attorneys. The attorney was not present, and Husband requested the hearing be continued so that he could cross-examine the attorney on her fee. The subsequent hearing was held two days later.

Following the second hearing, the family court issued two orders in February 2002. One found Husband should pay the increased child support as of August 1, but did not find him in willful contempt for failing to do so. Additionally, he was found in contempt for failing to make timely payments on medical bills and thereafter required to pay uncovered medicals within fourteen days from the date Wife mailed him notice. Husband was found in contempt for failing to pay the remaining balance on the $1,000 attorneys' fees and was ordered jailed for ten days with the ability to purge the contempt by paying the $500 remaining.

The second order required Husband to pay $4,727.25 in attorneys' fees as a result of Wife's institution of the rule to show cause. This amount was over $2,000 more than the amount submitted at the initial hearing on the rule to show cause.

Husband has appealed the Amended Final Order, the order denying his motion for reconsideration, and the orders resulting from the rule to show cause.

## STANDARD OF REVIEW

■ In appeals from the family court, this court may find facts in accordance with its own view of the preponderance of the evidence. *Rutherford v. Rutherford*, 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992); *Owens v. Owens*, 320 S.C. 543, 546, 466 S.E.2d 373, 375 (Ct.App.1996). However, this broad scope of review does not require us to disregard the family court's findings. *Stevenson v. Stevenson*, 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981).

## LAW/ANALYSIS

### A. HUSBAND'S APPEAL

### 1. Whether the family court erred in imputing income to Husband

■ Husband asserts the family court erred by imputing to him an additional $5,403.56 per month in income for calculation of child support.[2] We agree.

The South Carolina Child Support Guidelines define "income" as "the actual gross income of the parent if employed to full capacity, or potential income if unemployed or underemployed." 27 S.C.Code Ann. Regs. 114–4720(A) (Supp.2003). The guidelines further provide:

> Potential Income. If the court finds that a parent is voluntarily unemployed or underemployed, it should calculate child support based on a determination of potential income which would otherwise ordinarily be available to the parent.

27 S.C.Code Ann. Regs. 114–4720(A)(5) (Supp.2003).

During the marriage, Husband was employed by Wife's father. Husband's expert testified that his annual income during this time was between $35,000 and $40,000, and Wife

---

**2.** Husband's monthly income as reflected on his financial declaration was $3,656.56. This income plus the additional imputed income total $9,060.12.

did not contradict this testimony. Following the separation, Husband's employment with Wife's father was terminated, and he started his own consulting and land development business. Since beginning his own business, Husband made more money than when working for his father-in-law. According to his financial declaration, Husband was earning nearly $44,000 at the time of trial. Nevertheless, at Wife's urging, the family court imputed more income to Husband than he earned at any time during the marriage.

Wife argues that although Husband has increased his income following the separation, he is not earning income commensurate with his earning capacity, and that Husband is capable of earning substantially more than his current income. Wife points out that Husband has an undergraduate degree from Clemson University and a master's degree in landscape architecture from Harvard University. Wife's position is that because Husband is so well educated, he could earn more money than he is currently earning. Wife essentially argues Husband is not billing his clients a high enough hourly rate or billing the maximum number of hours.

Even accepting Wife's assertions as true, we do not find this to be a case for imputation of income because there is no indication that Husband has voluntarily lessened his earning capacity. "[T]he failure to reach earning capacity, by itself, does not automatically equate to voluntary underemployment such that income must be imputed." *Kelley v. Kelley,* 324 S.C. 481, 488–89, 477 S.E.2d 727, 731 (Ct.App.1996). "[C]ourts are to closely examine the payor's good-faith and reasonable explanation for the decreased income." *Id.* at 489, 477 S.E.2d at 731.

In this case, there is no evidence Husband has decreased his income at all. In fact, his income has increased since the time of the parties' separation. Moreover, the mere fact that Husband could make additional income does not warrant the imputation of income. There is no evidence that Husband's failure to make additional income was due to any wrongdoing on his part or motivated by a desire to decrease his support obligation. *See Mazzone v. Miles,* 341 S.C. 203, 209, 532 S.E.2d 890, 893 (Ct.App.2000) (declining to impute more than minimum wage to husband when there was no evidence that

the loss of his job was due to any wrongdoing, or that his decision to start his own business was motivated by a desire to avoid his child support obligations). "[C]ourts are reluctant to invade a party's freedom to pursue the employment path of their [sic] own choosing or impose unreasonable demands on parties." *Kelley,* 324 S.C. at 489, 477 S.E.2d at 731.

The family court erred in imputing income to Husband of over $9,000 per month because there is no evidence in this record that Husband voluntarily depressed his income. In fact, at the time of the hearing, Husband was making *more* income in his new business than he had ever earned during the parties' marriage. Following Wife's argument to its logical conclusion, a family court could impute income to a spouse if it merely found that he or she was capable of earning more income. This is simply not the test for imputation of income in this state. Therefore, because we do not find Husband has voluntarily lessened his earning capacity, we reverse the family court's decision to impute income to him.

■ However, for purposes of setting child support we do not accept Husband's income as stated on his financial declaration. Accordingly, we now undertake to establish Husband's income for purposes of determining child support. The guidelines define gross income for self-employed persons as:

gross receipts minus ordinary and necessary expenses required for self-employment or business operation.... However, the court should exclude from those expenses amounts allowed by the Internal Revenue Service for accelerated depreciation or investment tax credits for purposes of the guidelines and add those amounts back in to determine gross income. In general, the court should carefully review income and expenses from self-employment or operation of a business to determine actual levels of gross income available to the parent to satisfy a child support obligation. As may be apparent, this amount may differ from a determination of business income for tax purposes.

27 S.C.Code Ann. Regs. 114–4720(A)(5) (Supp.2003).

Husband's financial declaration lists his gross monthly income as $3,656.56 per month, or $43,878.72 per year. Husband's financial expert explained roughly how this number was calculated. The expert testified that Husband's consult-

ing and land development business generated gross revenues of $91,000 in 2000. He deducted business expenses of $37,000 to arrive at a net income of approximately $54,000. The expert added back into the net income a $5,010 charitable contribution that was incorrectly deducted from the gross revenues as a business expense on Husband's financial declaration. The expert reduced Husband's net income by the losses incurred by Husband's Bee Blessed Honey Business of approximately $14,800 and his Heritage Tent Company of approximately $2,000. The expert testified that, as a result, Husband's net income was in the range of $4,056 per month or $48,672 annually.

We accept the testimony of Husband's expert that Husband generated gross revenues of $91,000 and business expenses of $37,000 in the year 2000. We also agree that the $5,010 charitable contribution was incorrectly deducted from Husband's gross revenues. However, we do not believe Husband's monthly income should be reduced by the losses from his honey and tent businesses. From our view of the evidence, we agree with Wife's argument that Husband is operating those businesses as a hobby and therefore cannot use them to reduce his monthly income. In sum, we find Husband's income to be the $91,000 in gross revenues, less $37,000 in business expenses, plus the $5,010 charitable contribution, equaling $4,917.50 per month or $59,010 annually. Thus, we remand[3] the issue of child support for recalculation based on this income. This recalculation should be retroactive to the date of the final order.

## 2. Whether the family court erred in failing to impute income to Wife

■ Husband argues that the family court erred in failing to impute more income to Wife based on her ability to rent a home for less than market value because the home is owned by the Grandchildren's Trust. We disagree.

---

3. Because these parties have such a litigious history, we have attempted to remand as few issues as possible. However, we are not able to calculate child support ourselves because the record does not reflect how much Wife pays each month for the child's health insurance.

Following the parties' separation, Wife moved to a home in Brevard, North Carolina which had been recently purchased by the Grandchildren's Trust, a trust in which she may be one of two trustees[4] and is the sole beneficiary. According to Wife's financial declaration, she paid $1,000 each month to the Grandchildren's trust to rent the home. Husband argues that this rental rate is below fair market value, and based on his own real estate experience, alleges that the fair market rental value of Wife's home is $2,760 a month, or one percent of the sales price. Husband asks that the difference between the fair market rental value and the rent actually paid be considered income as an in-kind subsidization of Wife's housing by the Grandchildren's Trust, analogous to income in the form of in-kind payments received by a self-employed parent provided for in the child support guidelines.

First, it is questionable whether Husband's testimony as to the fair market rental value of Wife's home provided a sufficient basis on which the family court judge could have imputed income to Wife. However, even assuming without deciding that Husband's assertion regarding fair market value is correct, the guidelines provide that "gross income" does *not* include "in-kind income." Rather, the guidelines provide that "the court should count as income expense reimbursements or in-kind payments received by a parent from self-employment or operation of a business if they are significant and reduce personal living expenses, such as a company car, free housing, or reimbursed meals." 27 S.C.Code Ann. Regs. 114–4720(A)(3)(c) (Supp.2003). Husband makes no argument that Wife receives a reduced rental rate in exchange for operating a business or through self-employment. Thus, even if Wife is renting her home below fair market value, such a benefit would be in-kind income specifically excluded from gross income under the guidelines. We therefore find the family court did not err in excluding any difference between the fair market value and the actual rent paid from Wife's income.

---

4. The trust document does not appear in the record. Wife's expert testified that Henry Bernheim is the trustee, however, Husband's expert testified that the trust document suggested Wife was a co-trustee with Bernheim.

**3. Whether the family court erred in (a) excluding testimony of W.C. Hoecke regarding Medicaid, and (b) failing to assign all uncovered medical expenses to Wife**

Husband argues the family court erred in requiring him to pay his *pro rata* share of the child's medical expenses not covered by health insurance. Husband alleges that Medicaid would cover all of the child's medical costs if the child lived in South Carolina, rather than North Carolina. Because Wife voluntarily moved to North Carolina, Husband argues that he should not bear the burden of the uncovered medical expenses.

■ The guidelines state that "[e]xtraordinary unreimbursed medical expenses addressed by the court *shall* be divided in pro rata percentages based on the proportional share of combined monthly adjusted gross income." 27 S.C.Code Ann. Regs. 114–4720(G) (Supp.2003) (emphasis added). The use of the word "shall" in the guidelines indicates the provision is mandatory. *See Charleston County Parents for Public Schools, Inc. v. Moseley*, 343 S.C. 509, 519, 541 S.E.2d 533, 538 (2001). A court may deviate from the guidelines upon considering, among other factors, "child-related unreimbursed extraordinary medical expenses." S.C.Code Ann. § 20–7–852(C)(8) (Supp.2003).

■ At trial, Husband sought testimony from W.C. Hoecke, a pastor and employee of Family Connection of South Carolina, Inc., an organization that connects families of children with special needs. The family court excluded the testimony as irrelevant, but permitted Husband to make a proffer. During the proffer of Hoecke's testimony, Hoecke was asked if the child was eligible for Medicaid in South Carolina. He testified: "I have never come across a child yet with Down's Syndrome that isn't eligible." When questioned again if the parties' child specifically would qualify, Hoecke testified that "[a]gain, you're going to have to go to the State of South Carolina to get that, but I have never yet found a child with Down's Syndrome that hasn't qualified...."

■ On appeal, Husband argues that this testimony was relevant to Wife's claim for contribution from him for the

child's uncovered medical expenses and alleges it was error not to assign all uncovered medical expenses to Wife. We believe the family court erred in not ascertaining whether the child's uncovered medical expenditures, which are substantial, would have been covered by Medicaid if Wife had continued to live in South Carolina.[5] We agree with Husband that this evidence was certainly relevant to the determination of payment of uncovered medical expenses. However, the court also ordered Wife to apply for Medicaid on the child's behalf in North Carolina. Because we are remanding the issue of child support to the family court for re-determination, the family court is directed to address the issue of the child's eligibility for Medicaid in apportioning the uncovered medicals between the parties.

### 4. Whether the family court erred in failing to admit evidence of the corpus of (a) the Fraser Family Trust, and (b) the Grandchildren's Trust

At trial, Husband sought to introduce evidence regarding the corpuses of two trusts of which Wife was a beneficiary, the Fraser Family Trust and the Grandchildren's Trust. The family court excluded this evidence as irrelevant, but allowed Husband to proffer the amount by providing the court with a sealed envelope stating the corpus amounts. Husband contends this was error because the corpuses are relevant to setting child support, awarding attorneys' fees, divvying up uncovered medical bills, and his request that Wife reimburse him for a portion of the costs he incurred while visiting the child in Brevard. Husband maintains Wife has access to the trust property in addition to the income to benefit her and to maintain her lifestyle. We agree that the court erred in excluding the evidence as irrelevant.

Wife is one of three beneficiaries of the Fraser Family Trust and receives income of approximately $12,000 per year in distributions from this trust.[6] The trustees are Wife, her sister, and her mother. Both Husband's expert and the trust

---

**5.** Evidence in the record indicated that Wife presently lives "down the street" from the South Carolina border.

**6.** Wife has also received payment from the trust from sale proceeds of Six Oaks Cemetery, an asset contained in the trust corpus.

document indicate the trustees can invade the corpus of the trust in order to maintain Wife's standard of living. The trust document provides: "The Trustee may at any time and from time to time encroach on the principal of this trust in such amounts as the Trustee may deem necessary in its judgment to provide for the support of ... LAURA LAWTON STONE FRASER ... in [her] accustomed manner of living and for [her] education...." While this invasion of the corpus to maintain Wife's standard of living is neither mandatory nor within the sole power of Wife, as beneficiary Wife may seek payment of the corpus to maintain her standard of living, and as co-trustee Wife has the power to influence any distribution.

While the documents creating the Grandchildren's trust are not in evidence, there is some testimony regarding this trust. Wife's expert testified that Henry Bernheim is the trustee; however, Husband's expert testified that the trust documents suggest Wife is a co-trustee. Wife is the sole income beneficiary and receives approximately $25,000 per year in distributions.[7] Both Wife's and Husband's experts testified that Wife could not receive any corpus distributions from the Grandchildren's Trust. While she may not be able to invade the corpus of this trust as she can the Fraser Family Trust, this trust purchased the home in which she and her child reside in Brevard. Thus, it appears that Wife has the power to influence the investment of the trust corpus for her benefit.

In awarding attorney's fees, the family court should consider, among other things, the respective financial conditions of the parties and the effect the fee would have on each party's standard of living. *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). Because Wife could invade the corpus of one trust to maintain her standard of living and could influence the investment of the other trust for her financial benefit, the family court should have considered the trust corpuses when deciding whether to award attorneys' fees. Furthermore, because these trusts affected Wife's financial condition, the family court should have taken them into consideration when determining whether Wife ought to reim-

---

7. This trust corpus has contained some significant assets in the past, including the Umbro corporation. After its sale, Wife received approximately $134,000 from the trust.

burse Husband for a portion of the costs he incurred while visiting the child in Brevard.[8]

As to the issues of child support and uncovered medical bills, we do not believe the amounts of the trust corpuses are relevant because the child support guidelines do not provide for consideration of nonmarital property. *See* 27 S.C.Code Ann. Regs. 114-4720 (Supp.2003). We therefore find the trust corpuses relevant only to the issues of attorneys' fees and travel costs. However, because of our decision *infra* to reverse the award of attorneys' fees, we reverse and remand only to the extent the trust corpuses affect the issue of travel reimbursement.

5. **Whether the family court erred in dividing the pretrial GAL fees equally between the parties when sixty percent of the GAL fees were incurred traveling from Hilton Head to Brevard**

Husband argues the family court erred in dividing the pre-trial guardian ad litem fees equally between the parties when sixty percent of the hours charged were with respect to the Wife, and specifically when ten of the 88.45 hours charged were spent traveling to the Wife's home in Brevard. We disagree.

"An award of guardian ad litem fees lies within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of discretion." *Shirley v. Shirley*, 342 S.C. 324, 341, 536 S.E.2d 427, 436 (Ct.App.2000) (citation

8. At trial, the guardian suggested Wife pay Husband $300 per month to help defray the cost of exercising visitation in Brevard. On appeal, Husband argues the family court abused its discretion in failing to follow this recommendation. Because we reverse and remand the issue of travel costs based on the family court's failure to consider the trust corpuses, we need not address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (explaining that the appellate court need not address remaining issues when disposition of prior issues is dispositive). Husband also argues that the issue of *child support* should be reversed and remanded because the family court failed to consider the expenses he incurred each time he exercised visitation in Brevard. However, this argument was not raised to the family court at trial, and therefore is not preserved for appeal. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998).

omitted). Husband complains that Wife's move to Brevard, North Carolina caused the guardian to incur additional fees in the form of travel. However, the parties agreed to the appointment of the guardian, Ralph Tupper, an attorney who practices in Beaufort, South Carolina. Had a guardian been appointed who was nearer to Brevard, additional expense would have been incurred when he or she visited with Husband in Hilton Head. Thus, we decline to find that the family court abused its discretion in splitting the pre-trial guardian fees equally between the parties.

### 6. Whether the family court erred in assigning Husband all of the trial GAL fees

■ Husband argues the family court erred in imposing upon him the entire cost of the guardian's fees incurred during trial. We agree.

In apportioning guardian fees, the final order stated: "I believe the issue of visitation was tried primarily because [Husband] would not accept the Guardian ad Litem's recommendations. Thus, I believe that it is fair to require him to be responsible for the Guardian ad Litem's fees at trial." In private actions, a guardian "functions as a representative of the court, appointed to assist the court in making its determination of custody by advocating for the best interest of the children and providing the court with an objective view." *Patel v. Patel,* 347 S.C. 281, 287, 555 S.E.2d 386, 389 (2001). The family court judge, not the guardian, is the ultimate decision-maker with respect to visitation and the best interest of the child. Therefore, Husband had no obligation to accept the recommendation of the guardian regarding visitation.

In this case, Husband had a legitimate interest in seeking overnight visitation in his own home. We do not feel Husband should be penalized for litigating a meritorious issue. *See Greene v. Durham Life Ins. Co.,* 287 S.C. 197, 199, 336 S.E.2d 478, 480 (1985) (affirming the trial court's decision not to award attorney's fees, finding respondent should not be penalized for its decision to litigate a meritorious issue). We find the family court abused its discretion in imposing on Husband the entire cost of the guardian fees incurred during trial. We

find it equitable to equally apportion the cost of the guardian's trial fees between the parties.

### 7. Whether the family court erred in awarding Wife $65,000 in attorneys' fees

The family court's final order required Husband to pay Wife $65,000 for attorneys' fees, in addition to the $10,000 and $1,000 awards previously ordered on the rules to show cause. Husband contends the family court erred in awarding the $65,000 in attorneys' fees to Wife. We agree.

An award of attorney's fees will not be overturned absent an abuse of discretion. *Stevenson v. Stevenson*, 295 S.C. 412, 415, 368 S.E.2d 901, 903 (1988). In deciding whether to award attorney's fees, the family court should consider the parties' ability to pay their own fee, the beneficial results obtained by counsel, the respective financial conditions of the parties, and the effect of the fee on each party's standard of living. *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992).

In awarding attorneys' fees to Wife, the family court concluded:

> Both parties have the ability to pay their own fees.... [Wife] prevailed on the major issues.... In light of the equitable division, [Husband] is in a superior financial condition.... Each party's standard of living would be affected, but I believe that it would be unfair for [Wife] to have to pay the majority of her attorneys' fees since most of the protracted nature of this litigation was precipitated by [Husband].

We agree with the family court's initial observation that both parties have the ability to pay their own fees. However, we strongly disagree that Husband is to blame for the "protracted nature of this litigation." While Husband is guilty of prolonging the discovery process by claiming a confidentiality privilege that he did not have, Husband has already been held in contempt and ordered to pay $10,000 for doing so. It is unfair for the family court to continue to punish Husband for that isolated incident of misbehavior, and frankly, nothing in the record indicates that Husband was more to blame than Wife for this case's litigious history.

Because our opinion has afforded the parties a substantially equivalent result and because each party has the ability to pay his or her own fees, we reverse the award of attorneys' fees. The parties will bear the cost of their own attorneys.

## 8. Whether the family court erred in denying Husband Easter and summer visitation.

Husband argues the family court erred in denying him Easter and summer visitation. We agree.

"When awarding visitation, the controlling consideration is the welfare and best interest of the child. As with child custody, the issue of child visitation falls within the discretion of the trial judge, and his findings will not be disturbed absent an abuse of discretion." *Woodall v. Woodall*, 322 S.C. 7, 12, 471 S.E.2d 154, 158 (1996) (citations omitted).

In its final order, the family court established specific guidelines for holiday visitation, but failed to address Easter weekend. The family court also declined to award extended summer visitation to Husband. In his motion for reconsideration, Husband specifically asked for Easter visitation and extended summer visitation, but without explanation, the family court denied his request.

In cases of child custody, our court usually affords great deference to the visitation schedule established by the family court; however, we do have the ability, when necessary, to find facts in accordance with our own view of the preponderance of the evidence. *Rutherford v. Rutherford*, 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992). Where, as here, the best interest of the child is compromised by the family court's visitation schedule, we are compelled to exercise our *de novo* review.

As to Easter visitation, both parties testified that they are Christians and are involved with church and religious activities. Considering the significance of Easter weekend to the parties' religious faith, we find it to be in the child's best interest to share the holiday in a manner similar to the schedule provided for during the Thanksgiving and Christmas holidays.

Additionally, we find it in the child's best interest to have extended summer visitation with Husband. During the trial, Wife argued that frequent travel caused the child to regress in therapy and to become sick more often. Addressing this issue in its final order, the family court stated:

> I do not believe there is a threat to [the child's] health because of travel in and of itself[.] Because of his condition, I believe that at his age, he is more easily susceptible to infection, stress and tiring. This concern must be balanced against the need to bond with his father. Both parents are needed in [the child's] life.

We agree with this premise and find an award of summer visitation would have furthered these goals. Summer visitation would have reduced any stress associated with frequent travel. Furthermore, now that the child is over forty-three months old, all experts agree that allowing the child to visit Husband in Hilton Head would not adversely affect the child's development. Moreover, because the child is of school age, it is likely impossible for Husband to exercise his weeklong visitation during the months of February, June, and October, as originally provided for in the final order.

Accordingly, we find summer visitation, as well as Easter visitation, to be in the best interest of the child. We therefore remand this issue to the family court to establish a schedule.

### 9. Whether the family court erred in valuing the Boozer–Arnal lots

Husband argues the family court erred in valuing certain marital property known as the "Boozer–Arnal lots" based on Wife's appraiser's values. Specifically, Husband contends this value should not have been accepted by the family court because Wife's appraiser valued the lots a year after the date of filing and did not adjust for a sales commission. We disagree.

Marital property includes "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation." S.C.Code Ann. § 20–7–473 (Supp.2003). Thus, for purposes of equitable distribution, the value of marital property is the value of the property at

the time of the commencement of the marital litigation. *See Mallett v. Mallett,* 323 S.C. 141, 151, 473 S.E.2d 804, 810 (Ct.App.1996). Importantly, however, both parties are entitled to share in any appreciation or depreciation that occurs to marital property after separation but before divorce. *Hatfield v. VanEpps,* 358 S.C. 185, 194, 594 S.E.2d 526, 531 (Ct.App. 2004); *see also Smith v. Smith,* 294 S.C. 194, 203, 363 S.E.2d 404, 409 (Ct.App.1987) ("We know of no authority, and the husband does not cite any, that holds that only one spouse is entitled to any appreciation in marital assets that occurs after the parties separate and before the parties are divorced. We would think both parties would be entitled to any such appreciation."); *Dixon v. Dixon,* 334 S.C. 222, 228, 512 S.E.2d 539, 542 (Ct.App.1999) ("[I]t is not unusual for the value of marital assets to change, sometimes substantially, between the time the action was commenced and its final resolution. In such a case, the family court has the ability to consider the post-filing appreciation or depreciation when valuing and apportioning the marital estate.").

In this case, Wife filed for divorce on December 6, 1999. The case came to trial in late April 2001. Wife's appraiser valued the lots four months prior to trial whereas Husband based his valuation on county tax appraisals that were conducted prior to Wife filing her complaint. Notably, Husband did not present any evidence that the value of the lots stayed the same from the time of filing to the time of the final hearing. Furthermore, Husband's argument concerning the adjustment for commission is speculative and irrelevant to the valuation of the lots. Accordingly, we find no error in the trial court accepting the valuation provided by Wife.

10. **Whether the family court erred in excluding testimony of John L. Hunter, when his testimony set the basis for the appreciation of the Six Oaks Cemetery due to Husband's efforts**

At trial, Husband sought to introduce testimony from John L. Hunter, the administrator of Six Oaks Cemetery. Six Oaks Cemetery was owned by the Fraser Family Trust, and Wife managed the property during the marriage. Prior to the final hearing, the cemetery was sold, and Wife received a portion of the proceeds. At trial, Husband attempted to call

Hunter to the stand in order to show that the money Wife made from the sale was either (a) non-marital property in which Husband had a special equity interest because of the contributions he made to the cemetery, or (b) marital property because it stemmed from the work Wife performed during the marriage. Wife objected to Hunter testifying about the cemetery because Hunter was listed as a witness who would testify about "a church he was involved with with Mary Fraser, ... intra-family relationships, [and] inquisition of his wife on [an] EMS call." Husband argued Hunter's testimony would fall within the scope of describing intra-family relationships. The family court sustained Wife's objection, but allowed Husband to proffer the testimony. On appeal, Husband argues the family court erred in excluding Hunter's testimony. We disagree.

The proffered testimony by Hunter concerned the gross receipts of the cemetery and Husband's efforts in improving the cemetery. Hunter's testimony did not describe any interaction between Husband and Wife or between any other family members. We do not see how this testimony comes within the purview of intra-family relationships.

Intertwined with his argument that the proffered testimony should have been considered, Husband also asserts that the family court erred in failing to assign to him a special equity in the cemetery. We disagree.

■ Generally, any increase in value of nonmarital property is also nonmarital property. S.C.Code Ann. § 20–7–473(5) (Supp.2003). However, a non-owner spouse has a special equity interest in any increase in value of non-marital property resulting from that spouse's material contribution. *See Murray v. Murray*, 312 S.C. 154, 159, 439 S.E.2d 312, 316 (Ct.App.1993). *See also* S.C.Code Ann. § 20–7–471 (Supp. 2003).

■ We find Husband failed to prove he made material contributions to the appreciation of the Six Oaks Cemetery. While he testified regarding the use of his landscaping designs and his physical labor at the cemetery, there is no testimony concerning any actual appreciation in value. Additionally, Wife testified Husband was paid for work at the cemetery and that his work amounted to very little time actually spent. *See*

*Webber v. Webber*, 285 S.C. 425, 427–28, 330 S.E.2d 79, 81 (Ct.App.1985) (stating that contributions must be material before court will award special equity and review of decision is for abuse of discretion). Therefore, we cannot say the family court abused its discretion by refusing to grant Husband a special equity interest in the proceeds from the sale of the cemetery.

### 11. Whether the family court erred in awarding Wife $4,725.25 in attorneys' fees for the contempt action

After the conclusion of the trial, Wife brought a contempt action against Husband for failing to pay child support and medical expenses in a timely manner. During the hearing, Wife's attorneys submitted an affidavit of attorneys' fees for $2,635.35 that had accrued in connection with the contempt action. This amount included estimated fees of $875 for the appearance of Mrs. Rosen, one of Wife's attorneys. However, due to an illness, Mrs. Rosen did not actually attend the hearing. Instead, Wife's other attorney, Mr. Rosen, covered the hearing. Mr. Rosen charged $1,125 for his appearance at the hearing.

Husband requested a continuation of the hearing in order to examine Mrs. Rosen regarding the reasonableness of her fees. The family court permitted the continuance and allowed Wife's attorneys to submit supplemental affidavits of attorneys' fees, which included fees incurred by Mr. Rosen, Mrs. Rosen, and a paralegal for their appearance at the second hearing, totaling $8,019. After the second hearing, the family court awarded Wife $4,725.25 in attorneys' fees. This amount included the fees incurred by Mr. Rosen for his appearance at the first hearing ($2,885.25 [9]) and four hours of fees for Mr. Rosen, Mrs. Rosen, and the paralegal ($1,860) for their appearance at the second hearing. Husband contends this was error, and we agree.

---

**9.** In calculating the fees incurred by Mr. Rosen at the first hearing, the family court subtracted the amount estimated by Mrs. Rosen's appearance at the hearing, $875, from the total submitted in the affidavit, $2,635.25, and added Mr. Rosen's fee for his appearance, $1,125, totaling $2,885.25. Added to this was the $1,860 in attorneys' and paralegal fees. Although this sum comes to $4,745.25, the family court awarded $4,725.25.

Initially, we note that Husband was not at fault for Mrs. Rosen's failure to appear at the first hearing. Furthermore, he should not be penalized for exercising his right to question the reasonableness and validity of Mrs. Rosen's charges. *See Greene v. Durham Life Ins. Co.*, 287 S.C. 197, 199, 336 S.E.2d 478, 480 (1985) (affirming the trial court's decision not to award attorney's fees because respondent should not be penalized for litigating a meritorious issue). Thus, although the award of attorney's fees is within the discretion of the family court,[10] we reverse the award to the extent that it reimbursed Wife's attorneys for their fees from the second hearing. It was an abuse of discretion to penalize Husband for exercising his right to cross-examine Mrs. Rosen. Husband is therefore obligated to pay $2,885.25 rather than $4,725.25 for the fees incurred by Wife's attorneys for the contempt action.

## 12. Whether the family court erred in requiring Husband to pay uncovered medicals within fourteen days of date of mailing or faxing

The final order of the family court requires Husband to pay Wife his portion of the uncovered medical expenses within fourteen days of receiving an itemization by Wife. After Husband failed to make timely payments, the family court found Husband in contempt and ordered him to provide Wife with a facsimile number to which she could send notice of expenses. If Husband failed to provide a number, Wife could serve notice by certified mail. In either event, the court ordered Husband to pay Wife his portion of the uncovered medical expenses within fourteen days from which the notice was faxed or mailed. Husband contends this was error. We agree.

Wife has not submitted any evidence that this short time period is necessary to ensure a timely payment of the bills or continued treatment of the child. Therefore, we find fourteen days from the time notice is faxed or mailed to be an unreasonably short period of time given the nature and potential amount of the child's uncovered medical expenses. *See Rutherford v. Rutherford*, 307 S.C. 199, 204, 414 S.E.2d 157, 160

---

**10.** *Lindsay v. Lindsay*, 328 S.C. 329, 345–46, 491 S.E.2d 583, 592 (Ct.App.1997).

(1992) (explaining that, in appeals from the family court, the appellate court may find facts in accordance with its own view of the preponderance of the evidence). Instead, we find it equitable to both parties for Husband to pay Wife his portion of the uncovered medical expenses within thirty days of the date notice is faxed or mailed.

### 13. Whether the family court erred in excluding testimony of Brian Clark

Prior to trial, Wife moved to hold Husband in contempt for discovery abuses. The family court found Husband had failed to comply with discovery and imposed sanctions on Husband by awarding Wife $10,000 in attorneys' fees. At trial, Husband sought to introduce testimony from Brian Clark and certain exhibits "to clear the air on compliance with discovery requests." The family court excluded the testimony, stating the issue had already been ruled upon. On appeal, Husband argues the testimony was relevant to show that he had fully complied with discovery. Husband makes no argument regarding this issue and cites no authority.[11] Therefore, we find the issue is abandoned on appeal. *See Glasscock, Inc. v. Fidelity and Guar. Co.,* 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct.App.2001) ("[S]hort, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review.").

### 14. Whether the family court erred in awarding $10,000 attorneys' fees due to abuse in discovery.

As explained above, the family court awarded Wife $10,000 in attorneys' fees after finding Husband failed to comply with discovery. Husband argues this was error. We find this issue was not timely appealed.

An order finding a party in contempt is immediately appealable. *See Hooper v. Rockwell,* 334 S.C. 281, 291, 513 S.E.2d 358, 364 (1999). Because the order was not appealed within

---

11. In his reply brief, Husband asserts that this argument is not abandoned on appeal because it is intimately intertwined with issue number fifteen on appeal, which was adequately argued and briefed. Even if this issue is related to issue fifteen, Husband has failed to make any reference to the relevancy of Brian Clark's testimony or exhibits in issue fifteen. Further, Husband cites to no authority with respect to the relevancy of Brian Clark's testimony or exhibits in issue fifteen.

the thirty-day limit under Rule 203(b)(3), SCACR, we dismiss this issue on appeal. *See* Rule 203(d)(3), SCACR ("If the notice is not timely filed or the filing fee is not paid in full, the appeal shall be dismissed, and shall not be reinstated except as provided by Rule 231.").

### 15. Whether the family court judge erred in failing to recuse himself

Husband argues that the family court judge erred in failing to recuse himself from the hearing on Wife's action for contempt following the trial. We disagree.

The Code of Judicial Conduct requires a judge to 'disqualify himself in a proceeding in which his impartiality might reasonably be questioned. Canon 3(C)(1) of the Code of Judicial Conduct, Rule 501, SCACR. A judge must exercise sound judicial discretion in determining whether his impartiality might reasonably be questioned.' Absent evidence of judicial prejudice, a judge's failure to disqualify himself will not be reversed on appeal. It is not enough for a party seeking disqualification to simply allege bias. The party must show some evidence of bias. Furthermore, the alleged bias must be personal, as distinguished from judicial, in nature.

*Parker v. Shecut,* 340 S.C. 460, 497, 531 S.E.2d 546, 566 (Ct.App.2000), *rev'd on other grounds by* 349 S.C. 226, 562 S.E.2d 620 (2002).

Husband has failed to present any evidence of bias by the family court judge. It is not sufficient for Husband to assert bias in the contempt action because the same judge presided at the final hearing and ruled against him. *See Mallett v. Mallett,* 323 S.C. 141, 147, 473 S.E.2d 804, 808 (Ct.App.1996) ("The fact a trial judge ultimately rules against a litigant is not proof of prejudice by the judge, even if it is later held the judge committed error in his rulings."). Therefore, we find no error in the family court judge's failure to recuse himself.

## B.  WIFE'S CROSS–APPEAL

### 1.  Whether the family court's equitable division of the property was erroneous.

Wife argues that the family court judge's equitable division of marital property was tainted because he failed to

address the fifteen factors listed in section 20–7–472 of the South Carolina Code (Supp.2003). We disagree.

Section 20–7–472 sets forth factors the family court should consider when equitably dividing a marital estate and vests the family court with discretion to decide what weight to assign each factor. *Jenkins v. Jenkins,* 345 S.C. 88, 100, 545 S.E.2d 531, 537 (Ct.App.2001). "This court will affirm the family court judge if it can be determined that the judge addressed the factors under section 20–7–472 sufficiently for us to conclude he was cognizant of the statutory factors." *Id.*

In this case, the family court judge specifically stated: "I have applied the factors listed in § 20–7–472 and relevant case law to divide the property. . . ." Therefore, we are satisfied that the judge was cognizant of the fifteen statutory factors set forth in section 20–7–472. Accordingly, we affirm the family court's division of marital property.

### 2. Whether the family court erred in excluding a real estate lot

■ Wife argues the family court erred in excluding from the final order a parcel of land that was marital property. The specific lot allegedly excluded was "lot A 39–4," part of the marital property known as the Boozer–Arnal lots. We find this issue is not preserved.

At trial, Wife offered into evidence appraised values of the "Boozer–Arnal lots." However, the appraiser mistakenly appraised "lot A 38–4," a lot that Husband never owned, instead of "lot A 39–4," which Husband owned. In the final order, the family court identifies the marital property to include the Boozer–Arnal property, but specifically excludes the lot improperly appraised by Wife's expert, lot A 38–4. In valuing these lots, the final order accepts the values of Wife's expert. Because Wife's expert did not value lot A 39–4, Wife did not receive any of the lot's value, even though it was deemed marital property.

After the family court issued its order, Wife did not file a Rule 59(e) motion raising the issue of the value of lot A 39–4 to the family court judge. Thus, this issue is not preserved for appeal. *See Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998); *Halbersberg v. Berry,* 302 S.C. 97, 103,

394 S.E.2d 7, 12 (1990) (finding the omission of the master in equity not preserved because the party did not bring the omission to the attention of the master through a proper motion).

## CONCLUSION

We affirm the family court's order with respect to Wife's income, award of pre-trial guardian fees, equitable division, valuation of the Boozer–Arnal lots, and award of $10,000 in attorneys' fees on Wife's action for contempt. We also affirm the family court's exclusion of testimony by John. L. Hunter regarding Six Oaks Cemetery and Brian Clark regarding discovery compliance. Further, we affirm the family court judge's decision not to recuse himself from the contempt action following the final hearing.

We reverse the family court's decision to impute income to Husband and assign Husband income in the amount of $59,010 annually. We also reverse the family court's requirement that Husband pay all of the guardian's fees incurred during trial and find the parties should bear that expense equally. Further, we reverse the family court's exclusion of the trust corpuses; denial of Easter and summer visitation; award of $65,000 in attorneys' fees to Wife; award of $4,725.25 in attorneys' fees on the post-trial contempt action; and requirement that Husband pay uncovered medical expenses within fourteen days, finding thirty days to be more equitable. Finally, we reverse the award of $65,000 in attorneys' fees to Wife and order each party to bear their own attorneys' fees.

We remand the issues of child support, uncovered medical bills, Easter and summer visitation, and reimbursement for Husband's trips to Brevard.

AFFIRMED in part, REVERSED in part, and REMANDED.

HUFF and KITTREDGE, JJ., concur.